## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Clean Label Project Foundation, | ) | |
| 280 E. 1st Ave. #873 | ) | |
| Broomfield, CO 80038, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | Removed from Superior Court of the |
| v. | ) | District of Columbia |
| | ) | |
| Abbott Laboratories, Inc., | ) | |
| 100 Abbott Park Road | ) | |
| Abbott Park, IL 60064, | ) | |
| | | |
| Defendant. | | |

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendant Abbott Laboratories ("Abbott"), by and through its attorneys, hereby removes the above-captioned action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. In support of this Notice of Removal, Defendant states the following:

## I.      REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY

1.      On October 1, 2021, Plaintiff Clean Label Project Foundation ("CLP") filed a Complaint and Demand for Jury Trial (the "Complaint") in the Superior Court of the District of Columbia. It alleges that Abbott violated the D.C. Consumer Protection Procedures Act ("CPPA") by engaging in "deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)" because the formula contained "concerning levels" of lead and cadmium despite marketing of the product as supporting brain, immune, and bone development.   A true and legible copy of the Complaint is attached as **Exhibit A**.

2.      CLP brings its claims on behalf of the "general public" under two statutory provisions.  ***First***, Plaintiff purports to be "a nonprofit organization" that can bring its claims "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public." Compl. ¶¶ 137–38 (quoting D.C. Code § 28-3905(k)(l)(C)).  ***Second***, Plaintiff asserts that it is a "public-interest organization pursuant to D.C. Code § 28-3905(k)(l)(D) and brings this representative action on behalf of members of the general public who could bring the action under D.C. Code § 28-3905(k)(l)(A)." *Id.* at ¶ 140.

3.      On November 17, 2021, Plaintiff served copies of the Complaint and Summons on Abbott.  Copies of all process, pleadings, orders and other papers filed in the state court action— as available from the state court docket at the time of filing this Notice—are attached hereto as **Exhibit B**.

4.      On December 7, 2021, Abbott filed a Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint.

5.      The instant Notice of Removal is timely filed within thirty (30) days of Abbott's receipt through service of the Complaint and Summons on November 17, 2021.

6.      No further pleadings have been filed, and no proceedings have yet occurred in this action in the Superior Court of the District of Columbia.

7.      Venue for removal is proper in the United States District Court for the District of Columbia.

8.      Abbott bases removal on the Complaint raising federal questions and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

## II.   PLAINTIFF'S COMPLAINT RAISES FEDERAL QUESTIONS

9.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. "A case 'arises under' federal law if a 'well-pleaded complaint establishes ... that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *D.C. v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 53 (D.D.C. 2008) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).  A state law claim still raises a federal question when it "necessarily raise[s] a stated federal issue, [is] actually disputed and substantial," and the "federal forum may entertain [it] without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

10.     The face of Plaintiff's Complaint establishes that the asserted claims against Abbott raise substantial questions of federal law.

11.     ***First***, CLP alleges, "[i]n sum, Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment."  Compl. ¶ 40 (emphasis added).

12.     Plaintiff's claim that there is "no known safe level" of lead and cadmium is a necessary allegation in its Complaint, and is a representation and question of federal law.  Abbott disputes that federal law establishes that any detectible level of lead or cadmium is unsafe and impacts brain, bone, and immune health.

13.     Plaintiff explicitly and repeatedly references federal regulatory bodies that allegedly endorse this "no known safe level" standard in its Complaint:

- "The **Environmental Protection Agency**, **Food and Drug Administration**, the World Health Organization, **Centers for Disease Control and Prevention**, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children."  Compl. ¶ 30 (emphasis added); *see also id.* at ¶ 73 (same).

- "Given the ubiquity of **the public health and public policy positions above**, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done." *Id.* at ¶ 35 (emphasis added).

- "Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment." *Id.* at ¶ 40 (emphasis added).

14.     The Complaint states that any deviation from this alleged federal "no known safe level" is a violation of the CPPA.  Consistent with *Grable*, a federal court has jurisdiction to hear state law claims that allege a federal standard as the bar by which Abbott's products are measured and determined to be safe.  545 U.S. at 312.

15.     ***Second***, "[i]nfant formula and baby food marketed in the United States are [] subject to FDA regulations." *See Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, 2013 WL 4501308, at *5 (D. Md. Aug. 21, 2013), *aff'd sub nom. Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015).  Infant formula is subject to federal regulation through the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Infant Formula Act of 1980 ("Formula Act"), Pub. L. No. 96-359, 94 Stat. 1190, and various implementing regulations that address the formulation of infant formula and its marketing/labeling.  *See, e.g.*, 21 U.S.C. § 350a (defining "adulteration" of infant formula in subsection (a); describing information needed for new formula in subsection (d)); 21 C.F.R. § 106.91 (describing quality control procedures).  Federal issues are necessarily and substantially implicated by Plaintiff's claims that encroach on these FDA regulatory powers.

16.     While "adulterated" is defined by federal law, the Plaintiff's Complaint alleges that "the Product is adulterated under DC Code § 48-103 *et seq.*" (*see, e.g.*, Compl. ¶ 36) based on a standard that conflicts with federal law. Plaintiff alleges the Product is "adulterated" under the D.C. Code based merely on the detectible presence of trace metals.  *See* Compl. ¶ 36.

17.     Plaintiff is using the District of Columbia's state-law CPPA claim to impose a standard for "adulteration" that conflicts with the federal regulatory standard for infant formula and therefore raises a federal question about compliance with the FDCA and relevant regulations. Plaintiff further seeks relief that could, among other things, require Defendant to provide conflicting information to consumers about the safety and efficacy of its infant formula, and promote its product in a manner that is different than what the FDA determined is appropriate under its Congressionally authorized regulatory scope.

18.     When a federal regulatory scheme occupies the regulation of products, such as the FDA does here, non-identical state law requirements are preempted. *See Nemphos ex rel. C.G.N.*, 2013 WL 4501308, at *3–*5.  Here, Plaintiff is seeking relief that would preclude the sale of a federally approved product and/or require Abbott to resubmit its product to the FDA. *See* 21 U.S.C. § 350a(d). Because of the mismatch between federal law and Plaintiff's claims, the latter are preempted both impliedly and expressly.

19.     Abbott actually disputes that a federal requirement of "no known safe level" is the measure for lead and cadmium in its products, nor is it a requirement for Abbott to truthfully and accurately label Alimentum as supporting "brain," "bone," or "immune support functions."

20.     Abbott actually disputes that the level of lead or cadmium Plaintiff alleges in Alimentum renders it "adulterated" under federal law.

21.     As D.C. CPPA claims are commonly adjudicated by the United States District Court for the District of Columbia, this federal forum may entertain Plaintiff's D.C. CPPA claims raising disputed federal issues without disturbing any Congressionally approved balance of federal and state judicial responsibilities.

## III.     REMOVAL IS APPROPRIATE UNDER CAFA

22.     In the alternative, this case is properly removed to this Court under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[1]

23.     CAFA vests federal district courts with diversity jurisdiction over any purported class action in which (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (ii) the proposed class contains at least 100 members, and (iii) the amount in controversy is at least $5,000,000 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5).

24.     CAFA "only requires that the action be brought under Rule 23 or a statute that *authorizes* class actions to be brought by a person." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (emphasis in original). Plaintiff brings this action under D.C. Code § 28-3905(k)(1)(D)(i), which states that "public interest organizations may, on behalf of the interests of … a **class of consumers**, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District…." Compl. ¶¶ 140–41; D.C. Code §§ 28-3905(k)(1)(D)(i) (emphasis added).  Plaintiff is explicitly bringing this matter under a statute that authorizes class action.

25.     Further, Plaintiff seeks "the remedies available under D.C. Code §§ 28-3905(k)(2)(B-F)," which includes monetary damages. Compl. at Prayer for Relief. Under those statutory provisions, Plaintiff seeks monetary "[p]unitive damages" and "money" restitution (i.e., "relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice"). D.C. Code §§ 28-3905(k)(2)(B-F). In *Rotunda v. Marriott International, Inc.*, the District of Columbia Court of

---

[1] The allegations of the Complaint also indicate the existence of diversity of citizenship jurisdiction under 28 U.S.C. § 1331(a), because the parties are completely diverse, and the amount in controversy exceeds $75,000.

Appeals held that, to obtain representative relief "on behalf of the general public," CPPA actions seeking monetary relief must comply with the class certification requirements of Rule 23. 123 A.3d 980, 988–89 (D.C. 2015). As Plaintiff has prayed for remedies including punitive damages and "money" restitution, this case is removable under CAFA and *Rotunda*.

26.     This lawsuit otherwise meets the requirements of CAFA. **First**, the parties are diverse in citizenship.  Plaintiff is a citizen of Colorado seeking to represent consumers in the District of Columbia. *See* Compl. at Case Caption. Abbott Laboratories is not a citizen of Colorado (or the District of Columbia)—it is an Illinois corporation, with its corporate headquarters in Illinois.

27.     **Second**, the proposed class in Plaintiff's Complaint is more than 100 members. Plaintiff's putative class would include all members of the general public of the District of Columbia that purchased the allegedly deceptive Similac product. *See, e.g.*, Compl. ¶¶ 37, 119, 140. The number of consumers who purchased Similac Alimentum in the District of Columbia surpasses 100 class members.

28.     **Third**, the amount in controversy exceeds $5,000,000 in aggregate. *See Lavelle v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 3d 217, 220 (D.D.C. 2017) ("The claims of all putative class members are aggregated to determine the amount in controversy"). "If a defendant seeks to remove a class action to federal court pursuant to the Class Action Fairness Act, the 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Id.* at 220 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014)).[2]

---

[2] To the extent there is any dispute as to the amount in controversy, Abbott expressly reserves the right to submit evidence substantiating its jurisdictional allegations.

29.     The amount in controversy requirement for CAFA jurisdiction is met by the potential monetary damages and cost of equitable relief alleged by Plaintiff. The D.C. CPPA remedies sought by Plaintiff include "attorney's fees," "punitive damages," and "additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice." D.C. Code § 28-3905(k)(2). Further, Plaintiff seeks an order "enjoining Abbott's conduct found to be in violation of the CPPA," as well as "corrective advertising to the residents of the District of Columbia that restores consumers." Compl. at Prayer for Relief.

30.     As a result, Plaintiff alleges to seek the removal of thousands of bottles of Similac, reformulation of the product (and attendant research and development, FDA approval, etc.), and changes in labeling and marketing for the subsequent production of thousands of new Alimentum products.  These expenses plausibly place an amount of more than $5,000,000 potentially "in controversy."[3]  *See* 28 U.S.C. § 1332(d)(2); *cf.*, *Fefferman v. Dr. Pepper Snapple Grp., Inc.*, 2013 WL 12114486, at *3–4 (S.D. Cal. Mar. 12, 2013) (For class action regarding "antioxidant" advertising of 7Up, "[a]dding together the cost of corrective advertising, product recall, raw material destruction, attorney's fees, and a year of salary and benefits for the new employees prayed for in Plaintiff's complaint, the amount in controversy is over $5,000,000," including close to $5,000,000 for corrective advertisement alone).  The fact that Plaintiff did not seek relief under D.C. Code § 28-3905(k)(2)(a), under which a consumer who is harmed by an unlawful trade practice may sue for treble damages (or $1,500 per violation), reflects that the "punitive damages" and/or financial restitution sought by Plaintiff for each of the thousands of Alimentum products

---

[3] To be clear, while CLP's allegations place this amount in controversy, Abbott denies that CLP or any other litigant is entitled to and should obtain such a recovery and will vigorously defend against these allegations.

sold in the District of Columbia alone is greater than and plausibly exceeds the $5,000,000 CAFA amount in controversy.

## IV.    ALL OTHER REMOVAL REQUIREMENTS HAVE BEEN MET

31.    By filing this Notice of Removal, Abbott does not waive any defenses that may be available to it.

32.    Consistent with § 1446, Abbott is providing this Notice, which provides the requisite "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This Notice has been prepared and signed by an authorized attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure. *Id.*

33.    Pursuant to 28 U.S.C. § 1446(d), Abbott is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the District of Columbia, attaching as Exhibit A thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, Abbott hereby gives notice that the above-entitled state court action, formerly pending in the Superior Court of the District of Columbia, has been removed to the United States District Court for the District of Columbia.

Respectfully submitted,

Dated:  December 10, 2021

WINSTON & STRAWN LLP


By:    */s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
JBrightbill@winston.com
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855
*Counsel for Abbott Laboratories*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2021, the foregoing was served by U.S. mail on the following counsel and electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, D.C. 20037
(202) 643-1110
julie@oliverzhanglaw.com

*Counsel for Plaintiff*

By:    */s/ Jonathan D. Brightbill*
        Jonathan D. Brightbill
        D.C. Bar 483956
        JBrightbill@winston.com
        WINSTON & STRAWN LLP
        1901 L Street, N.W.
        Washington, D.C. 20036
        Tel. (202)-282-5855
        *Counsel for Abbott Laboratories*