

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION – CIVIL ACTIONS BRANCH**
**500 INDIANA AVENUE NW, Room 5000**
**WASHINGTON, DC 20001**

**Date:**

The Honorable Angela Caesar, Clerk
United States District Court for the District of Columbia
3rd and Constitution Avenue, Washington, D.C. 20001

**In Re:**

**Civil Action Number:**

**U.S. District Number:**

Dear Ms. Angela Caesar:

      Transmitted herewith are all of the pleadings filed in the above captioned case pursuant to a Petition for Removal Filed in the District of Columbia Superior Court on        .  A certified copy of the docket entries is also enclosed.

      Please acknowledge receipt of our file on a duplicate copy of this letter, and return it to this Court.

      Sincerely,

      Joy Jefferson, Branch Chief
Civil Actions Branch

**Completed By:** _____

| Case Number | Status | | Judge |
|---|---|---|---|
| 2021 CA 003557 B | Closed | | RIGSBY, ROBERT R |

| In The Matter Of | | Action |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION  Vs. ABBOTT LABORATORIES, INC | | Complaint for Deceit (Misrepresentation) Filed |

| Party | | Attorneys |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | PLNTF | OLIVER-ZHANG, JULIE |
| ABBOTT LABORATORIES, INC | DFNDT | BRIGHTBILL, JONATHAN D |

| Opened | Disposed | Case Type |
|---|---|---|
| 10/01/2021 | Removal-Notice of Removal To USDC | Civil II |

Comments:

| No. | Date of | Pleadings Filed, Orders and Decrees Journal Book-Page-Nbr    Ref Nbr | Amount Owed/ Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 1 | 12/16/21 | Notice of Hearing Mailed Next Business Day<br><br>Notice Of Removal Sent on:  12/16/2021  09:13:18.32 | 0.00 | 0.00 |
| 2 | 12/16/21 | Notice of Removal to USDC for the District of Columbia 1:21-cv-03247. MV | 0.00 | 0.00 |
| 3 | 12/16/21 | Event Resulted:<br>The following event: Initial Scheduling Conference-60 scheduled for 01/21/2022 at 10:00 am has been resulted as follows:<br><br>Result: Event Not Held Case Dismissed Judge: RIGSBY, ROBERT R    Location: Courtroom 320 | 0.00 | 0.00 |
| 4 | 12/10/21 | Defendant Abbott Laboratorie's Notice of filing of Notice of  Removal to USDC Filed. submitted 12/10/2021 19:54. mw Attorney: BRIGHTBILL, JONATHAN D (483956) ABBOTT LABORATORIES, INC (Defendant); | 0.00 | 0.00 |
| 5 | 12/07/21 | Additional eFiling Document to Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint Filed. submitted 12/07/2021 09:52. NB Attorney: BRIGHTBILL, JONATHAN D (483956) ABBOTT LABORATORIES, INC (Defendant); | 0.00 | 0.00 |

2021 CA 003557 B    CLEAN LABEL PROJECT FOUNDATION  Vs. ABBOTT LABORATORIES, INC

---

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr    Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|-----|---------|------------------------------------------------------------------------|----------------------------------|-------------|
| 6 | 12/07/21 | Consent Motion To Extend Time To<br>Answer Plaintiff's Complaint Or<br>Otherwise Respond To Plaintiff's<br>Complaint Filed. submitted 12/07/2021<br>09:52. NB<br>Attorney: BRIGHTBILL, JONATHAN D<br>(483956)<br>ABBOTT LABORATORIES, INC (Defendant);<br>Receipt: 484235  Date: 12/08/2021 | 20.00 | 0.00 |
| 7 | 11/29/21 | Proof of Service<br>        Method   : Service Issued<br>        Issued   : 11/05/2021<br>        Service  : Summons Issued<br>        Served   : 11/17/2021<br>        Return   : 11/29/2021<br>        On       : ABBOTT LABORATORIES, INC<br>        Signed By : Jousha Blevins<br><br>        Reason   : Proof of Service<br>        Comment  :<br><br>        Tracking #: 5000237466 | 0.00 | 0.00 |
| 8 | 11/29/21 | Affidavit of Service of Summons &<br>Complaint on Filed. submitted<br>11/29/2021 18:00. mw<br>ABBOTT LABORATORIES, INC (Defendant); | 0.00 | 0.00 |
| 9 | 11/05/21 | Summons Issued and eServed by the Clerk | 0.00 | 0.00 |
| 10 | 11/03/21 | Issue Date:  11/05/2021<br>Service:  Summons Issued<br>Method:  Service Issued<br>Cost Per:  $<br><br>        ABBOTT LABORATORIES, INC<br>        100 Abbott Park Road<br>        ABBOTT PARK, IL   60064<br>        Tracking No: 5000237465<br><br>        ABBOTT LABORATORIES, INC<br>        CT Corporation System<br>        1015 15th Street., N.W., Suite 1000<br>        WASHINGTON, DC   20005<br>        Tracking No: 5000237466 | 0.00 | 0.00 |
| 11 | 11/03/21 | Initial Summons Requested Filed.<br>submitted 11/03/2021 17:42. NB<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>ABBOTT LABORATORIES, INC (Defendant); | 0.00 | 0.00 |

2021 CA 003557 B   CLEAN LABEL PROJECT FOUNDATION  Vs. ABBOTT LABORATORIES, INC

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr      Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|-----|---------|---------|---------|---------|
| 12  |  10/07/21 | Complaint Package eServed to Filer | 0.00 | 0.00 |
| 13  | 10/05/21 | Initial Order and Addendum Issued (60<br>Days)<br><br>Initial Order-60 Days<br>Sent on:  10/05/2021  18:23:30.84 | 0.00 | 0.00 |
| 14  | 10/05/21 | Event Scheduled<br>Event: Initial Scheduling<br>Conference-60<br>Date: 01/21/2022    Time: 10:00 am<br>Judge: RIGSBY, ROBERT R    Location:<br>Courtroom 320 | 0.00 | 0.00 |
| 15  | 10/01/21 | eComplaint Filed. submitted 10/01/2021<br>20:01. mw (NO SUMMONS SUBMITTED)<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>CLEAN LABEL PROJECT FOUNDATION<br>(Plaintiff); | 0.00 | 0.00 |
| 16  | 10/01/21 | Complaint for Deceit<br>(Misrepresentation) Filed  Receipt:<br>480575  Date: 10/05/2021 | 120.00 | 0.00 |

                    Totals By:  Cost
                                                      140.00                  0.00
                            Information
                                                        0.00                  0.00
                    *** End of Report ***



A TRUE COPY
DATE:

Clerk, Superior Court of
the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

CLEAN LABEL PROJECT FOUNDATION,

                                        Plaintiff,

vs.

ABBOTT LABORATORIES, INC.,

                                        Defendant.

Case No. 2021 CA 003557 B

Judge: The Honorable Robert R. Rigsby

## DEFENDANT ABBOTT LABORATORIES'
## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, on December 10, 2021, Defendant Abbott Laboratories ("Abbott") filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, removing the above-captioned action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. A true and correct copy of the Notice of Removal is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE that upon the filing of Removal with the Clerk of the United States District Court for the District of Columbia, and filing copies thereof with the Clerk of the Superior Court of the District of Columbia, Defendant effected removal and the Superior Court shall proceed no further in this action unless and until the case is remanded pursuant to 28 U.S. C. § 1446(d).

Dated: December 10, 2021

By:   /s/ Jonathan D. Brightbill
      Jonathan D. Brightbill (D.C. Bar 483956)
      JBrightbill@winston.com
      WINSTON & STRAWN LLP
      1901 L Street, N.W.
      Washington, D.C. 20036
      Tel. (202)-282-5855
      *Counsel for Abbott Laboratories*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of December 2021, a true copy of the foregoing Corporate Disclosure Statement was served by electronic filing through the Court's CaseFileXpress system to:

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, DC 20037
(202) 643-1110
julie@oliverzhanglaw.com

*Counsel for Plaintiff*

By:     */s/ Jonathan D. Brightbill*
         Jonathan D. Brightbill
         D.C. Bar 483956
         JBrightbill@winston.com
         WINSTON & STRAWN LLP
         1901 L Street, N.W.
         Washington, D.C. 20036
         Tel. (202)-282-5855

         *Counsel for Abbott Laboratories*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Clean Label Project Foundation, | ) | |
| 280 E. 1st Ave. #873 | ) | |
| Broomfield, CO 80038, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | Removed from Superior Court of the |
| v. | ) | District of Columbia |
| | ) | |
| Abbott Laboratories, Inc., | ) | |
| 100 Abbott Park Road | ) | |
| Abbott Park, IL 60064, | ) | |
| | | |
| Defendant. | | |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant Abbott Laboratories ("Abbott"), by and through

its attorneys, hereby removes the above-captioned action from the Superior Court of the District

of Columbia to the United States District Court for the District of Columbia pursuant to 28 U.S.C.

§§ 1331, 1332, 1441, and 1446. In support of this Notice of Removal, Defendant states the

following:

**I.      REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY**

1.      On October 1, 2021, Plaintiff Clean Label Project Foundation ("CLP") filed a

Complaint and Demand for Jury Trial (the "Complaint") in the Superior Court of the District of

Columbia.  It alleges that Abbott violated the D.C. Consumer Protection Procedures Act ("CPPA")

by engaging in "deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For

Food Allergies and Colic (12.1 oz)" because the formula contained "concerning levels" of lead

and cadmium despite marketing of the product as supporting brain, immune, and bone

development.   A true and legible copy of the Complaint is attached as **Exhibit A**.

2.     CLP brings its claims on behalf of the "general public" under two statutory provisions. ***First***, Plaintiff purports to be "a nonprofit organization" that can bring its claims "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public." Compl. ¶¶ 137–38 (quoting D.C. Code § 28-3905(k)(l)(C)). ***Second***, Plaintiff asserts that it is a "public-interest organization pursuant to D.C. Code § 28-3905(k)(l)(D) and brings this representative action on behalf of members of the general public who could bring the action under D.C. Code § 28-3905(k)(l)(A)." *Id.* at ¶ 140.

3.     On November 17, 2021, Plaintiff served copies of the Complaint and Summons on Abbott.  Copies of all process, pleadings, orders and other papers filed in the state court action— as available from the state court docket at the time of filing this Notice—are attached hereto as **Exhibit B**.

4.     On December 7, 2021, Abbott filed a Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint.

5.     The instant Notice of Removal is timely filed within thirty (30) days of Abbott's receipt through service of the Complaint and Summons on November 17, 2021.

6.     No further pleadings have been filed, and no proceedings have yet occurred in this action in the Superior Court of the District of Columbia.

7.     Venue for removal is proper in the United States District Court for the District of Columbia.

8.     Abbott bases removal on the Complaint raising federal questions and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

## II.     PLAINTIFF'S COMPLAINT RAISES FEDERAL QUESTIONS

9.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. "A case 'arises under' federal law if a 'well-pleaded complaint establishes ... that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *D.C. v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 53 (D.D.C. 2008) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)). A state law claim still raises a federal question when it "necessarily raise[s] a stated federal issue, [is] actually disputed and substantial," and the "federal forum may entertain [it] without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

10.     The face of Plaintiff's Complaint establishes that the asserted claims against Abbott raise substantial questions of federal law.

11.     ***First***, CLP alleges, "[i]n sum, Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment." Compl. ¶ 40 (emphasis added).

12.     Plaintiff's claim that there is "no known safe level" of lead and cadmium is a necessary allegation in its Complaint, and is a representation and question of federal law. Abbott disputes that federal law establishes that any detectible level of lead or cadmium is unsafe and impacts brain, bone, and immune health.

13.     Plaintiff explicitly and repeatedly references federal regulatory bodies that allegedly endorse this "no known safe level" standard in its Complaint:

- "The **Environmental Protection Agency**, **Food and Drug Administration**, the World Health Organization, **Centers for Disease Control and Prevention**, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children." Compl. ¶ 30 (emphasis added); *see also id.* at ¶ 73 (same).

- "Given the ubiquity of **the public health and public policy positions above**, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done." *Id.* at ¶ 35 (emphasis added).

- "Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment." *Id.* at ¶ 40 (emphasis added).

14. The Complaint states that any deviation from this alleged federal "no known safe level" is a violation of the CPPA. Consistent with *Grable*, a federal court has jurisdiction to hear state law claims that allege a federal standard as the bar by which Abbott's products are measured and determined to be safe. 545 U.S. at 312.

15. ***Second***, "[i]nfant formula and baby food marketed in the United States are [] subject to FDA regulations." *See Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, 2013 WL 4501308, at *5 (D. Md. Aug. 21, 2013), *aff'd sub nom. Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015). Infant formula is subject to federal regulation through the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Infant Formula Act of 1980 ("Formula Act"), Pub. L. No. 96-359, 94 Stat. 1190, and various implementing regulations that address the formulation of infant formula and its marketing/labeling. *See, e.g.*, 21 U.S.C. § 350a (defining "adulteration" of infant formula in subsection (a); describing information needed for new formula in subsection (d)); 21 C.F.R. § 106.91 (describing quality control procedures). Federal issues are necessarily and substantially implicated by Plaintiff's claims that encroach on these FDA regulatory powers.

16. While "adulterated" is defined by federal law, the Plaintiff's Complaint alleges that "the Product is adulterated under DC Code § 48-103 *et seq.*" (*see, e.g.*, Compl. ¶ 36) based on a standard that conflicts with federal law. Plaintiff alleges the Product is "adulterated" under the D.C. Code based merely on the detectible presence of trace metals. *See* Compl. ¶ 36.

17.     Plaintiff is using the District of Columbia's state-law CPPA claim to impose a standard for "adulteration" that conflicts with the federal regulatory standard for infant formula and therefore raises a federal question about compliance with the FDCA and relevant regulations. Plaintiff further seeks relief that could, among other things, require Defendant to provide conflicting information to consumers about the safety and efficacy of its infant formula, and promote its product in a manner that is different than what the FDA determined is appropriate under its Congressionally authorized regulatory scope.

18.     When a federal regulatory scheme occupies the regulation of products, such as the FDA does here, non-identical state law requirements are preempted. *See Nemphos ex rel. C.G.N.*, 2013 WL 4501308, at *3–*5. Here, Plaintiff is seeking relief that would preclude the sale of a federally approved product and/or require Abbott to resubmit its product to the FDA. *See* 21 U.S.C. § 350a(d). Because of the mismatch between federal law and Plaintiff's claims, the latter are preempted both impliedly and expressly.

19.     Abbott actually disputes that a federal requirement of "no known safe level" is the measure for lead and cadmium in its products, nor is it a requirement for Abbott to truthfully and accurately label Alimentum as supporting "brain," "bone," or "immune support functions."

20.     Abbott actually disputes that the level of lead or cadmium Plaintiff alleges in Alimentum renders it "adulterated" under federal law.

21.     As D.C. CPPA claims are commonly adjudicated by the United States District Court for the District of Columbia, this federal forum may entertain Plaintiff's D.C. CPPA claims raising disputed federal issues without disturbing any Congressionally approved balance of federal and state judicial responsibilities.

## III.     REMOVAL IS APPROPRIATE UNDER CAFA

22.     In the alternative, this case is properly removed to this Court under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[1]

23.     CAFA vests federal district courts with diversity jurisdiction over any purported class action in which (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (ii) the proposed class contains at least 100 members, and (iii) the amount in controversy is at least $5,000,000 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5).

24.     CAFA "only requires that the action be brought under Rule 23 or a statute that *authorizes* class actions to be brought by a person." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (emphasis in original). Plaintiff brings this action under D.C. Code § 28-3905(k)(1)(D)(i), which states that "public interest organizations may, on behalf of the interests of … a **class of consumers**, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District…." Compl. ¶¶ 140–41; D.C. Code §§ 28-3905(k)(1)(D)(i) (emphasis added).  Plaintiff is explicitly bringing this matter under a statute that authorizes class action.

25.     Further, Plaintiff seeks "the remedies available under D.C. Code §§ 28-3905(k)(2)(B-F)," which includes monetary damages. Compl. at Prayer for Relief. Under those statutory provisions, Plaintiff seeks monetary "[p]unitive damages" and "money" restitution (i.e., "relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice").   D.C. Code §§ 28-3905(k)(2)(B-F).  In *Rotunda v. Marriott International, Inc.*, the District of Columbia Court of

---

[1] The allegations of the Complaint also indicate the existence of diversity of citizenship jurisdiction under 28 U.S.C. § 1331(a), because the parties are completely diverse, and the amount in controversy exceeds $75,000.

Appeals held that, to obtain representative relief "on behalf of the general public," CPPA actions seeking monetary relief must comply with the class certification requirements of Rule 23. 123 A.3d 980, 988–89 (D.C. 2015). As Plaintiff has prayed for remedies including punitive damages and "money" restitution, this case is removable under CAFA and *Rotunda*.

26.     This lawsuit otherwise meets the requirements of CAFA. ***First***, the parties are diverse in citizenship.  Plaintiff is a citizen of Colorado seeking to represent consumers in the District of Columbia. *See* Compl. at Case Caption. Abbott Laboratories is not a citizen of Colorado (or the District of Columbia)—it is an Illinois corporation, with its corporate headquarters in Illinois.

27.     ***Second***, the proposed class in Plaintiff's Complaint is more than 100 members. Plaintiff's putative class would include all members of the general public of the District of Columbia that purchased the allegedly deceptive Similac product. *See, e.g.*, Compl. ¶¶ 37, 119, 140. The number of consumers who purchased Similac Alimentum in the District of Columbia surpasses 100 class members.

28.     ***Third***, the amount in controversy exceeds $5,000,000 in aggregate. *See Lavelle v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 3d 217, 220 (D.D.C. 2017) ("The claims of all putative class members are aggregated to determine the amount in controversy"). "If a defendant seeks to remove a class action to federal court pursuant to the Class Action Fairness Act, the 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Id.* at 220 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014)).[2]

---

[2] To the extent there is any dispute as to the amount in controversy, Abbott expressly reserves the right to submit evidence substantiating its jurisdictional allegations.

29.     The amount in controversy requirement for CAFA jurisdiction is met by the potential monetary damages and cost of equitable relief alleged by Plaintiff. The D.C. CPPA remedies sought by Plaintiff include "attorney's fees," "punitive damages," and "additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice." D.C. Code § 28-3905(k)(2). Further, Plaintiff seeks an order "enjoining Abbott's conduct found to be in violation of the CPPA," as well as "corrective advertising to the residents of the District of Columbia that restores consumers." Compl. at Prayer for Relief.

30.     As a result, Plaintiff alleges to seek the removal of thousands of bottles of Similac, reformulation of the product (and attendant research and development, FDA approval, etc.), and changes in labeling and marketing for the subsequent production of thousands of new Alimentum products.  These expenses plausibly place an amount of more than $5,000,000 potentially "in controversy."[3]  *See* 28 U.S.C. § 1332(d)(2); *cf.*, *Fefferman v. Dr. Pepper Snapple Grp., Inc.*, 2013 WL 12114486, at *3–4 (S.D. Cal. Mar. 12, 2013) (For class action regarding "antioxidant" advertising of 7Up, "[a]dding together the cost of corrective advertising, product recall, raw material destruction, attorney's fees, and a year of salary and benefits for the new employees prayed for in Plaintiff's complaint, the amount in controversy is over $5,000,000," including close to $5,000,000 for corrective advertisement alone).  The fact that Plaintiff did not seek relief under D.C. Code § 28-3905(k)(2)(a), under which a consumer who is harmed by an unlawful trade practice may sue for treble damages (or $1,500 per violation), reflects that the "punitive damages" and/or financial restitution sought by Plaintiff for each of the thousands of Alimentum products

---

[3] To be clear, while CLP's allegations place this amount in controversy, Abbott denies that CLP or any other litigant is entitled to and should obtain such a recovery and will vigorously defend against these allegations.

sold in the District of Columbia alone is greater than and plausibly exceeds the $5,000,000 CAFA amount in controversy.

## IV.    ALL OTHER REMOVAL REQUIREMENTS HAVE BEEN MET

31.    By filing this Notice of Removal, Abbott does not waive any defenses that may be available to it.

32.    Consistent with § 1446, Abbott is providing this Notice, which provides the requisite "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This Notice has been prepared and signed by an authorized attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure. *Id.*

33.    Pursuant to 28 U.S.C. § 1446(d), Abbott is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the District of Columbia, attaching as Exhibit A thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, Abbott hereby gives notice that the above-entitled state court action, formerly pending in the Superior Court of the District of Columbia, has been removed to the United States District Court for the District of Columbia.

Respectfully submitted,

Dated: December 10, 2021

WINSTON & STRAWN LLP

By:    */s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
JBrightbill@winston.com
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855
*Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2021, the foregoing was served by U.S. mail on the following counsel and electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to all registered participants.

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, D.C. 20037
(202) 643-1110
julie@oliverzhanglaw.com

*Counsel for Plaintiff*

By:    */s/ Jonathan D. Brightbill*
Jonathan D. Brightbill
D.C. Bar 483956
JBrightbill@winston.com
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
Tel. (202)-282-5855
*Counsel for Abbott Laboratories*

# EXHIBIT A



# PROCESS SERVER DELIVERY DETAILS

**Date:**                              Wed, Nov 17, 2021

**Server Name:**                       Drop Service

| Entity Served | ABBOTT LABORATORIES, INC. |
|---|---|
| Case Number | 2021CA003557B |
| Jurisdiction | DC |





**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Clean Label Project Foundation
_____
                                                    Plaintiff

                        vs.
                                                                    Case Number   2021 CA 003557 B

Abbott Laboratories, Inc.
_____
                                                    Defendant

**SUMMONS**

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver-Zhang, Esq. #997813                        _Clerk of the Court_
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW                    By _____
_____
Address                                                         Deputy Clerk
Washington, DC 20037

202-643-1110                                    Date _____
_____
Telephone
如果需要翻译,请打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오.       የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

            contra
                                                    Número de Caso: _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

   Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

   A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                            *SECRETARIO DEL TRIBUNAL*

_____
Nombre del abogado del Demandante

                                    Por: _____
_____                    Subsecretario
Dirección

                                    Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828 로 전화주시기 바랍니다    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

   IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

   Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

                        Vea al dorso el original en inglés
                        See reverse side for English original

CV-3110 [Rev. June 2017]                                            Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
10/01/2021 26:03PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | * | Case No. 2021 CA 003557 B |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15th St, NW, Suite 1000 | * | |
| Washington, DC 20005 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### <u>Complaint</u>

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium. Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

## Introduction

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of
   neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often
   irreversible, placing incredible importance on ensuring developing brains and bodies are left
   unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including
   aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex
   interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting
   effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

   a. Proper nutrition starting in pregnancy
   b. Exposure to toxins or infections during these critical periods
   c. The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins,
   nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy

[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).

[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html

[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity,* 9(2) Pediatric obesity 135-146 (2014).

[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging.* American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical

   development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth,

   and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones,

    and they make purchasing decisions based on what they believe will maximize the health and

    wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development"

    and "bone development" platforms in order to capture this market.



Figure 1

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-

    Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

---

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019),
https://www.wnbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html
[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026--fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

    a. Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).
[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination,* Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm
[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf
[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent. As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/candidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a. The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b. The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c. The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible.  There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%20by%20October%202019.-,Nanoco%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20environmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water*, (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20set%20the%20maximum%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

     d.  The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[22]

     e.  The American Medical Association has stated: "We know that there is no safe level of lead."[23]

     f.  The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to the neurological health of these infants, who are disproportionately among an intersection of multiple vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive category test of over 60 infant formula commissioned by CLP has revealed that the levels of these contaminants are unusually high relative to competitive infant formula brands, with Defendant's Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learning%20problems.

[22] CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013), https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level.half%20%20%20camp%20of%20lignid.)

[23] AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,* https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code

§28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the

true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive

advertising and adulteration cause on behalf of themselves and the general public, and seek relief,

including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of

Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint,

consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423.  Defendant has

sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this

Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts

directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise

purposefully avails themselves of the laws of the District of Columbia through their marketing and

sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B),

(k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

## The Dangers of Lead

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafalowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function.* Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493

Estimated Loss of IQ in US Children at Different Intervals
of Blood Lead (μg/dL)



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain.* Nutrients, 3(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010).
https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq.* as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

   a.   Support for brain development.

   b.   Support for the infant immune system.

   c.   Health bone development.


### Dangers of Cadmium

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711
[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).

[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China.* 211 Environmental pollution 67-73 (2016).

[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).

[41] *Id.*

[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children.* Environmental health perspectives, *127*(3), 037003 (2019).

[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[...] deleterious substance which may render it
injurious to health[...]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium
directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Health bone development.

## Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as
cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products,
specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant
development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott
formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-
risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a
principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

## Abbott's Marketing is Misleading and Omits Material Facts

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



We promise to
give your baby
the best

* Similac formulas have no
  artificial growth hormones†

* Did you know: Similac dairy
  ingredients come from cows
  that have not been treated
  with artificial growth
  hormones

**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.




**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a false expectation that the Product will not contain contaminants that are harmful to infants.

8. Are your other formulas safe?

Absolutely. We're a science-based company, so we always start with what science says. The science is clear— GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium due to the absence of palm olein oil.



**Figure 9**                    **Figure 10**

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

<u>**The Presence of lead in the Product**</u>

107. CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    ii.      As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

## The Presence of Cadmium in the Product

110.  CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical

chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

    a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    iii.   As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium

content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

## Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune

functions of infants.

115. Abbott knew or should have known what representations it made on the Product.  Abbott also knew

or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively

marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase

decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very purpose of the Product.

**Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act**

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this representative action claim on behalf of themselves and the general public of the District of Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq.*

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq.* Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

a. represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

...

d. represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

e. misrepresent as to a material fact which has a tendency to mislead; ...

f. fail to state a material fact if such failure tends to mislead

f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; ... [or]

h. advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq*, pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

> (1) a direct conflict between the challenged conduct and the organization's mission, and

> (2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under

D.C. Code §28-3905(k)(2)(B-F):

A.  A Declaration that Abbott's conduct is in violation of the CPPA

B.  An Order enjoining Abbott's conduct found to be in violation of the CPPA

C.  An Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D.  An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Clean Label Project Foundation

vs

Abbott Laboratories

Case Number: 2021 CA 003557 B

Date: October 1, 2021

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
|---|---|
| Firm Name: Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff |
| Telephone No.: 202-643-1110   Six digit Unified Bar No.: 997183 | ☐ Self (Pro Se)   ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☒ 6 Person Jury   ☐ 12 Person Jury

Demand: $_____   Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

## NATURE OF SUIT:   *(Check One Box Only)*

### A. CONTRACTS

**COLLECTION CASES**

- ☐ 01 Breach of Contract
- ☐ 02 Breach of Warranty
- ☐ 06 Negotiable Instrument
- ☐ 07 Personal Property
- ☐ 13 Employment Discrimination
- ☐ 15 Special Education Fees

- ☐ 14 Under $25,000 Pltf. Grants Consent
- ☐ 17 OVER $25,000 Pltf. Grants Consent
- ☐ 27 Insurance/Subrogation Over $25,000 Pltf. Grants Consent
- ☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
- ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

- ☐ 16 Under $25,000 Consent Denied
- ☐ 18 OVER $25,000 Consent Denied
- ☐ 26 Insurance/Subrogation Over $25,000 Consent Denied
- ☐ 34 Insurance/Subrogation Under $25,000 Consent Denied

### B. PROPERTY TORTS

- ☐ 01 Automobile
- ☐ 02 Conversion
- ☐ 07 Shoplifting, D.C. Code § 27-102 (a)
- ☐ 03 Destruction of Private Property
- ☐ 04 Property Damage
- ☐ 05 Trespass

### C. PERSONAL TORTS

- ☐ 01 Abuse of Process
- ☐ 02 Alienation of Affection
- ☐ 03 Assault and Battery
- ☐ 04 Automobile- Personal Injury
- ☒ 05 Deceit (Misrepresentation)
- ☐ 06 False Accusation
- ☐ 07 False Arrest
- ☐ 08 Fraud

- ☐ 10 Invasion of Privacy
- ☐ 11 Libel and Slander
- ☐ 12 Malicious Interference
- ☐ 13 Malicious Prosecution
- ☐ 14 Malpractice Legal
- ☐ 15 Malpractice Medical (Including Wrongful Death)
- ☐ 16 Negligence- (Not Automobile, Not Malpractice)

- ☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
- ☐ 18 Wrongful Death (Not Malpractice)
- ☐ 19 Wrongful Eviction
- ☐ 20 Friendly Suit
- ☐ 21 Asbestos
- ☐ 22 Toxic/Mass Torts
- ☐ 23 Tobacco
- ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE   ☐   IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [✓] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [X] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

| | |
|---|---|
| /s/ Julie Oliver-Zhang, Esq #997183 | October 1, 2021 |
| Attorney's Signature | Date |



**Superior Court of the District of Columbia**
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

**COMPLAINT**
Jurisdiction of this Court is founded on D.C. Code § 11-921.

| Clean Label Project | | | | Abbott Laboratories | | |
|---|---|---|---|---|---|---|
| PLAINTIFF | | | vs | DEFENDANT | | |
| 280 E. 1st Ave #873 | | | | 100 Abbott Park Road | | |
| Address (No Post Office Boxes) | | | | Address (No Post Office Boxes) | | |
| Broomfield | Colorado | 80038-0873 | | Abbott Park | Illinois | 60064 |
| City | State | Zip Code | | City | State | Zip Code |
| 734-678-9871 | | | | 224-667-6100 | | |
| Telephone Number | | | | Telephone Number | | |
| jbowen@cleanlabelproject.org | | | | | | |
| Email Address (optional) | | | | Email Address (optional) | | |

1.  Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

    Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant

    Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it

    contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product

    intended for use during a critical period of children's neurodevelopment. Abbott's false and

    misleading representations and omissions, including any tendency to mislead or omit violate

    the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.


2.  What relief are you requesting from the Court? Include any request for money damages.

    A declaration that Abbott's conduct is in violation of the CPPA.

    Order enjoining Abbott's conduct found to be in violation of the CPPA

    Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

    Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3. State any other information, of which the Court should be aware?

_____

_____

_____

_____

_____

_____

_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

Julie Oliver-zhang.
_____
SIGNATURE

10/01/2021.
_____
DATE

Subscribed and sworn to before me this ____1st____ day of ____October____ 20 21 .

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

_____
(Notary Public/Deputy Clerk)

2

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| | | **2021 CA 003557 B** |
| v. | * | FILED WITH COMPLAINT |
| ABBOTT LABORATORIES | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>VERIFICATION</u>

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.

10/01/21
Date

_Jaclyn Bowen_
Jaclyn Bowen



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

CLEAN LABEL PROJECT FOUNDATION
   Vs.                                   C.A. No.      2021 CA 003557 B
ABBOTT LABORATORIES, INC

## INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:        October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:  Courtroom 320
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

                    CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006. provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825  Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding:  (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option 1** (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

# EXHIBIT B

## 2021 CA 003557 B CLEAN LABEL PROJECT FOUNDATION Vs. ABBOTT LABORATORIES, INC RR

- Case Type:
- Civil II
- Case Status:
- Open
- File Date:
- 10/01/2021
- Action:
- Complaint for Deceit (Misrepresentation) Filed
- Status Date:
- 10/01/2021
- Next Event:
- 01/21/2022

| All Information | Party | Event | Docket | Receipt | Disposition |

### Docket Information

| Date | Docket Text | Image Avail. |
|------|-------------|--------------|
| 10/01/2021 | Complaint for Deceit (Misrepresentation) Filed  Receipt: 480575  Date: 10/05/2021 | |
| 10/01/2021 | eComplaint Filed. submitted 10/01/2021 20:01. mw (NO SUMMONS SUBMITTED)<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>CLEAN LABEL PROJECT FOUNDATION (Plaintiff); | Image |
| 10/05/2021 | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 01/21/2022    Time: 10:00 am<br>Judge: RIGSBY, ROBERT R    Location: Courtroom 320 | |
| 10/07/2021 | Complaint Package eServed to Filer | Image |
| 11/03/2021 | Initial Summons Requested Filed. submitted 11/03/2021 17:42. NB<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>ABBOTT LABORATORIES, INC (Defendant); | Image |
| 11/03/2021 | Issue Date: 11/05/2021<br>Service:  Summons Issued<br>Method:  Service Issued<br>Cost Per:  $<br><br>ABBOTT LABORATORIES, INC<br>100 Abbott Park Road<br>ABBOTT PARK, IL  60064<br>Tracking No: 5000237465<br><br>ABBOTT LABORATORIES, INC<br>CT Corporation System<br>1015 15th Street., N.W., Suite 1000<br>WASHINGTON, DC  20005<br>Tracking No: 5000237466 | |
| 11/29/2021 | Affidavit of Service of Summons & Complaint on Filed. submitted 11/29/2021 18:00. mw<br>ABBOTT LABORATORIES, INC (Defendant); | Image |

| Date | Docket Text | Image Avail. |
|------|-------------|--------------|
| 11/29/2021 | Proof of Service<br>    Method   : Service Issued<br>    Issued   : 11/05/2021<br>    Service   : Summons Issued<br>    Served   : 11/17/2021<br>    Return   : 11/29/2021<br>    On    : ABBOTT LABORATORIES, INC<br>    Signed By : Jousha Blevins<br><br>    Reason   : Proof of Service<br>    Comment   :<br><br>    Tracking #: 5000237466 | |
| 12/07/2021 | Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint Filed. submitted 12/07/2021 09:52. NB<br>Attorney: BRIGHTBILL, JONATHAN D (483956)<br>ABBOTT LABORATORIES, INC (Defendant); Receipt: 464235 Date: 12/08/2021 | Image |
| 12/07/2021 | Additional eFiling Document to Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint Filed. submitted 12/07/2021 09:52. NB<br>Attorney: BRIGHTBILL, JONATHAN D (483956)<br>ABBOTT LABORATORIES, INC (Defendant); | Image |

D.C. Superior Court
10/07/2021 26:83PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | * | Case No. 2021 CA 003557 B |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15th St, NW, Suite 1000 | * | |
| Washington, DC  20005 | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

### Complaint

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium.  Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

**Introduction**

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains and bodies are left unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

    a. Proper nutrition starting in pregnancy
    b. Exposure to toxins or infections during these critical periods
    c. The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins, nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy

[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).

[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html

[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity,* 9(2) Pediatric obesity 135-146 (2014).

[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging.* American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth, and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones, and they make purchasing decisions based on what they believe will maximize the health and wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development" and "bone development" platforms in order to capture this market.



**Figure 1**

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

___

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019), https://www.wnbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html
[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026-fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

   a. Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).

[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination,* Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm

[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf

[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent. As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/candidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a.   The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b.   The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c.   The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible. There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%20by%20October%202019,-Nanoco%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20environmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

   d.  The Centers for Disease Control have found "[n]o safe blood lead level has been
       identified."[22]

   e.   The American Medical Association has stated: "We know that there is no safe level of
       lead."[23]

   f.  The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in
       children, with lasting decreases in cognition documented in children with blood levels as low
       as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included
    similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to
    the neurological health of these infants, who are disproportionately among an intersection of multiple
    vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive
    category test of over 60 infant formula commissioned by CLP has revealed that the levels of these
    contaminants are unusually high relative to competitive infant formula brands, with Defendant's
    Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learn
ing%20problems.

[22]CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013),
https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a
%20cup%20of%20liquid.)

[23]  AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-
assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,*
https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-
health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive advertising and adulteration cause on behalf of themselves and the general public, and seek relief, including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case. Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails themselves of the laws of the District of Columbia through their marketing and sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B), (k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

**The Dangers of Lead**

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafałowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function.* Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf.

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain.* Nutrients, *3*(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010). https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq*. as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Support for the infant immune system.

    c.   Health bone development.

## Dangers of Cadmium

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711

[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).

[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. 211 Environmental pollution 67-73 (2016).

[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).

[41] *Id.*

[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children*. Environmental health perspectives, *127*(3), 037003 (2019).

[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[…] deleterious substance which may render it injurious to health[…]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Health bone development.

## Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products, specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

### Abbott's Marketing is Misleading and Omits Material Facts

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.

 

**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a false expectation that the Product will not contain contaminants that are harmful to infants.

8. Are your other formulas safe?
Absolutely. We're a science-based company, so we always start with what science says. The science is clear— GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium due to the absence of palm olein oil.



**Figure 9**                                                   **Figure 10**

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

### The Presence of lead in the Product

107. CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

ii.       As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

## The Presence of Cadmium in the Product

110. CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

     a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    iii.     As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

## Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune functions of infants.

115. Abbott knew or should have known what representations it made on the Product. Abbott also knew or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very purpose of the Product.

## Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this representative action claim on behalf of themselves and the general public of the District of Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq*.

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq*. Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

    a.   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

    d.   represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

    e.   misrepresent as to a material fact which has a tendency to mislead; …

    f.   fail to state a material fact if such failure tends to mislead

        f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

    h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq.* pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

> (1) a direct conflict between the challenged conduct and the organization's mission, and

> (2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under

D.C. Code §28-3905(k)(2)(B-F):

A.  A Declaration that Abbott's conduct is in violation of the CPPA

B.  An Order enjoining Abbott's conduct found to be in violation of the CPPA

C.  An Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D.  An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH
## INFORMATION SHEET

Clean Label Project Foundation

Case Number: __2021 CA 003557 B__

vs

Date: __October 1, 2021__

Abbott Laboratories

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* <br> Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
|---|---|
| Firm Name: <br> Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff |
| Telephone No.:     Six digit Unified Bar No.: <br> 202-643-1110      997183 | ☐ Self (Pro Se) <br><br> ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $_____     Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____    Judge: _____    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

**NATURE OF SUIT:** *(Check One Box Only)*

### A. CONTRACTS

**COLLECTION CASES**

☐ 01 Breach of Contract    ☐ 14 Under $25,000 Pltf. Grants Consent    ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty    ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument    ☐ 27 Insurance/Subrogation    ☐ 26 Insurance/Subrogation
☐ 07 Personal Property       Over $25,000 Pltf. Grants Consent       Over $25,000 Consent Denied
☐ 13 Employment Discrimination    ☐ 07 Insurance/Subrogation    ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees       Under $25,000 Pltf. Grants Consent       Under $25,000 Consent Denied
      ☐ 28 Motion to Confirm Arbitration
      Award (Collection Cases Only)

### B. PROPERTY TORTS

☐ 01 Automobile    ☐ 03 Destruction of Private Property    ☐ 05 Trespass
☐ 02 Conversion    ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

### C. PERSONAL TORTS

☐ 01 Abuse of Process    ☐ 10 Invasion of Privacy    ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection    ☐ 11 Libel and Slander       Not Malpractice)
☐ 03 Assault and Battery    ☐ 12 Malicious Interference    ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury    ☐ 13 Malicious Prosecution    ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation)    ☐ 14 Malpractice Legal    ☐ 20 Friendly Suit
☐ 06 False Accusation    ☐ 15 Malpractice Medical (Including Wrongful Death)    ☐ 21 Asbestos
☐ 07 False Arrest    ☐ 16 Negligence- (Not Automobile,    ☐ 22 Toxic/Mass Torts
☐ 08 Fraud       Not Malpractice)    ☐ 23 Tobacco
      ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

<u>  /s/ Julie Oliver-Zhang, Esq #997183  </u>
Attorney's Signature

<u>    October 1, 2021    </u>
Date

CV-496/ June 2015



**Superior Court of the District of Columbia**
**CIVIL DIVISION -- Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

| | | |
|---|---|---|
| **Clean Label Project** | vs | **Abbott Laboratories** |
| PLAINTIFF | | DEFENDANT |
| **280 E. 1st Ave #873** | | **100 Abbott Park Road** |
| Address (No Post Office Boxes) | | Address (No Post Office Boxes) |
| **Broomfield   Colorado    80038-0873** | | **Abbott Park  Illinois      60064** |
| City          State          Zip Code | | City          State          Zip Code |
| **734-678-9871** | | **224-667-6100** |
| Telephone Number | | Telephone Number |
| **jbowen@cleanlabelproject.org** | | |
| *Email Address (optional)* | | *Email Address (optional)* |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product intended for use during a critical period of children's neurodevelopment. Abbott's false and misleading representations and omissions, including any tendency to mislead or omit violate the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.

2. What relief are you requesting from the Court? Include any request for money damages.

   A declaration that Abbott's conduct is in violation of the CPPA.

   Order enjoining Abbott's conduct found to be in violation of the CPPA

   Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

   Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3. State any other information, of which the Court should be aware:

_____
_____
_____
_____
_____
_____
_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

_Julia Olier-Sharp_
**SIGNATURE**

_10/01/2021_
**DATE**

Subscribed and sworn to before me this _____ day of _October_ 20 21.

_____
(Notary Public/Deputy Clerk)

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | **2021 CA 003557 B** |
| v. | * | FILED WITH COMPLAINT |
| ABBOTT LABORATORIES | * | |
| Defendant. | * | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## **VERIFICATION**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.

_10/01/21_
Date

_[signature]_
Jaclyn Bowen

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
    Vs.                                  C.A. No.     2021 CA 003557 B
ABBOTT LABORATORIES, INC

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:     October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:  Courtroom 320
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1: (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> ✻ *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address https://dccourts.webex.com Select **Join**, enter the Meeting ID from the next page



AUDIO ALTERNATIVE**:** Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.

**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|-----|-----|-----|-----|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60



Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Clean Label Project Foundation
_____
Plaintiff

vs.

Abbott Laboratories, Inc.
_____
Defendant

Case Number      2021 CA 003557 B

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang, Esq. #997813
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW
_____
Address
Washington, DC 20037

202 - 643 - 1110
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

 

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

_____
Dirección

Por: _____
Subsecretario

_____
Teléfono

Fecha _____

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bản dịch, hãy gọi (202) 879-4828

만약 번역이 필요하면 (202) 879-4828 로 전화 하십시오    ያማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

AFFIDAVIT OF SERVICE

| Case:<br>2021 CA 03557 B | Court:<br>In The Superior Court of The District of Columbia<br>Civil Division | County:<br>Washington, DC | Job:<br>6353286 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Clean Label Project Foundation | | Defendant / Respondent:<br>Abbott Laboratories, Inc. | |
| Received by:<br>One Source Process, LLC | | For:<br>Oliver-Zhang Law Office | |
| To be served upon:<br>Abbott Laboratories, Inc. Serve on: Registered agent C T Corporation System | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   Jousha Blevins, 1015 15th St NW Suite 1000, Washington, DC 20005

Manner of Service:   Authorized, Nov 17, 2021, 12:45 pm EST

Documents:   SUMMONS; COMPLAINT; CIVIL DIVISION - CIVIL ACTIONS BRANCH INFORMATION SHEET; COMPLAINT; VERIFICATION; INITIAL ORDER AND ADDENDUM; CIVIL REMOTE HEARING INSTRUCTION FOR PARTICPANTS (Received Nov 15, 2021 at 1:34pm EST)

Additional Comments:
1) Successful Attempt: Nov 17, 2021, 12:45 pm EST at 1015 15th St NW Suite 1000, Washington, DC 20005 received by Jousha Blevins. Age: 20; Ethnicity: Caucasian; Gender: Male; Weight: 169 lbs; Height: 5'8"; Hair: Brown; Relationship: Intake Specialist;

Subscribed and sworn to before me by the affiant who is personally known to me.

_____   11/19/2021
Notary Public                          Date

ANDREW VITA
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires December 14, 2022
Commission Expires

_____   11-19-21
Marquis Harris                     Date

One Source Process, LLC
1133 13th Street NW, Suite C4
Washington, DC 20005
800-668-5448

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| Clean Label Project Foundation | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2021 CA 003557 B |
| | ) |
| Abbott Laboratories, Inc. | ) Judge: The Honorable Robert R. Rigsby |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S COMPLAINT**
**OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Abbott Laboratories ("Abbott"), through undersigned counsel, pursuant to Rule 6(b) of the Superior Court Rules of Civil Procedure ("Super. Ct. Civ. R."), and with the consent of counsel to Plaintiff Clean Label Project Foundation ("Plaintiff"), hereby moves the Court for a short extension of time in which to answer or otherwise respond to Plaintiff's Complaint ("Motion"), and in support states as follows:

1. On October 1, 2021, Plaintiff filed its Complaint.

2. On November 17, 2021, Defendant was served with a copy of the Complaint.

3. Pursuant to Super. Ct. Civ. R. 12(a), Defendant's deadline to file an answer or otherwise respond is at the earliest December 8, 2021.

4. On December 6, 2021, counsel for Abbott and Plaintiff (together, the "Parties") conferred and agreed to allow Defendant an extension of time to answer or otherwise respond to the Complaint.

5. Pursuant to the Parties' agreement, Defendant hereby requests that its deadline to answer or otherwise respond to the Complaint be extended by forty-five (45) days (i.e., up to and including Monday, January 24, 2022).

6.  The extension is appropriate because Defendant recently retained the undersigned counsel, who needs additional time to assess the case and respond during the winter holidays and ongoing pandemic.

WHEREFORE, for the foregoing reasons, Defendant Abbott respectfully requests that the Court grant this motion and extend the deadline for Defendant to file an answer or otherwise respond to the Complaint until on or before Monday, January 24, 2022.

Dated:  December 7, 2021

WINSTON & STRAWN LLP

By:     */s/ Jonathan D. Brightbill*
        Jonathan D. Brightbill (D.C. Bar 483956)
        JBrightbill@winston.com
        1901 L Street, N.W.
        Washington, D.C. 20036
        Tel: (202) 282-5855
        *Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2021, true copies of the foregoing Consent Motion to Extend Time to Answer Plaintiff's Complaint or Otherwise Respond to Plaintiff's Complaint and Proposed Order were served by electronic filing through the Court's CaseFileXpress system, to:

> Julie T. Oliver-Zhang, Esq.
> Oliver-Zhang Law, PLLC
> 810 New Hampshire Ave., NW
> Washington, DC 20037
> (202) 643-1110
> julie@oliverzhanglaw.com
> *Counsel for Plaintiff*

*/s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Clean Label Project Foundation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2021 CA 003557 B |
| v. | ) | |
| | ) | Judge: The Honorable Robert R. Rigsby |
| Abbott Laboratories, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER ON CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S**
**COMPLAINT OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Upon consideration of the Consent Motion to Extend Time to Answer Plaintiff's Complaint

or Otherwise Respond to Plaintiff's Complaint ("the Consent Motion") filed by Defendant Abbott

Laboratories ("Defendant"), it is HEREBY ORDERED that the motion is GRANTED;

IT IS THEREFORE ORDERED that Defendant is granted an extension of the due date for

responding to the Complaint. The new due date for Defendant's response is **January 24, 2022**.

IT IS SO ORDERED.

Dated: December ___, 2021

_____
Judge Robert R. Rigsby

Copies to:

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, DC 20037
Tel: (202) 643-1110
julie@oliverzhanglaw.com
*Counsel for Plaintiff*

Jonathan D. Brightbill
Winston & Strawn LLP
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855
JBrightbill@winston.com
*Counsel for Defendant*

# CIVIL COVER SHEET

JS-44 (Rev. 11/2020 DC)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Clean Label Project Foundation<br>280 1st Ave., No. 873<br>Broomfield, CO 80038 | Abbott Laboratories<br>100 Abbott Park Road<br>Abbott Park, IL 60064 |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **88888**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Julie T. Oliver-Zhang, Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW, Washington, DC 20037
(202) 643-1110
julie@oliverzhanglaw.com

ATTORNEYS (IF KNOWN)
Jonathan D. Brightbill, Winston & Strawn LLP
1901 L Street, N.W. Washington, D.C. 20036
(202)-282-5855
JBrightbill@winston.com

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

Other Statutes
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 462 Naturalization Application

☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act (TCPA)
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ● 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. § 1331 (Fed. Question); 28 U.S.C. § 1332 (Diversity/CAFA); 28 U.S.C. § 1441, 1446 (Removal)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ <br> JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

| DATE: _____12/10/2021_____ | SIGNATURE OF ATTORNEY OF RECORD _____ /s/ Jonathan D. Brightbill _____ |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

**VI.**    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 16, 2021**

CASE NAME:  CLEAN LABEL PROJECT FOUNDATION Vs. ABBOTT
LABORATORIES, INC

CASE NUMBER:  2021 CA 003557 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

JONATHAN D BRIGHTBILL
KIRKLAND & ELLIS LLP
655 15TH STREET NW
WASHINGTON, DC 20005

2021 CA 003557 B

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**December 16, 2021**

CASE NAME:  CLEAN LABEL PROJECT FOUNDATION Vs. ABBOTT LABORATORIES, INC

CASE NUMBER:  2021 CA 003557 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

JULIE OLIVER-ZHANG
Oliver-Zhang Law
810 New Hampshire Ave., NW
WASHINGTON, DC 20037

2021 CA 003557 B

CANOR

Filed
D.C. Superior Court
12/10/2021 19:54PM
Clerk of the Court

### IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | |
| Plaintiff, | Case No. 2021 CA 003557 B |
| vs. | Judge: The Honorable Robert R. Rigsby |
| ABBOTT LABORATORIES, INC., | |
| Defendant. | |

### DEFENDANT ABBOTT LABORATORIES'
### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, on December 10, 2021, Defendant Abbott Laboratories ("Abbott") filed a Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, removing the above-captioned action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. A true and correct copy of the Notice of Removal is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE that upon the filing of Removal with the Clerk of the United States District Court for the District of Columbia, and filing copies thereof with the Clerk of the Superior Court of the District of Columbia, Defendant effected removal and the Superior Court shall proceed no further in this action unless and until the case is remanded pursuant to 28 U.S.C. § 1446(d).

Dated: December 10, 2021          By:    /s/ Jonathan D. Brightbill
                                         Jonathan D. Brightbill (D.C. Bar 483956)
                                         JBrightbill@winston.com
                                         WINSTON & STRAWN LLP
                                         1901 L Street, N.W.
                                         Washington, D.C. 20036
                                         Tel. (202)-282-5855
                                         *Counsel for Abbott Laboratories*

1

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December 2021, a true copy of the foregoing Corporate Disclosure Statement was served by electronic filing through the Court's CaseFileXpress system to:

> Julie T. Oliver-Zhang, Esq.
> Oliver-Zhang Law, PLLC
> 810 New Hampshire Ave., NW
> Washington, DC 20037
> (202) 643-1110
> julie@oliverzhanglaw.com
>
> *Counsel for Plaintiff*

By:     */s/ Jonathan D. Brightbill*
        Jonathan D. Brightbill
        D.C. Bar 483956
        JBrightbill@winston.com
        WINSTON & STRAWN LLP
        1901 L Street, N.W.
        Washington, D.C. 20036
        Tel. (202)-282-5855

        *Counsel for Abbott Laboratories*

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Clean Label Project Foundation,<br>280 E. 1st Ave. #873<br>Broomfield, CO 80038, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | Removed from Superior Court of the |
| v. | ) | District of Columbia |
| | ) | |
| Abbott Laboratories, Inc.,<br>100 Abbott Park Road<br>Abbott Park, IL 60064, | ) ) ) | |
| Defendant. | | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Abbott Laboratories ("Abbott"), by and through its attorneys, hereby removes the above-captioned action from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. In support of this Notice of Removal, Defendant states the following:

## I.     REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY

1.     On October 1, 2021, Plaintiff Clean Label Project Foundation ("CLP") filed a Complaint and Demand for Jury Trial (the "Complaint") in the Superior Court of the District of Columbia. It alleges that Abbott violated the D.C. Consumer Protection Procedures Act ("CPPA") by engaging in "deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)" because the formula contained "concerning levels" of lead and cadmium despite marketing of the product as supporting brain, immune, and bone development.   A true and legible copy of the Complaint is attached as **Exhibit A**.

2.     CLP brings its claims on behalf of the "general public" under two statutory provisions.  *First*, Plaintiff purports to be "a nonprofit organization" that can bring its claims "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public." Compl. ¶¶ 137–38 (quoting D.C. Code § 28-3905(k)(l)(C)).  *Second*, Plaintiff asserts that it is a "public-interest organization pursuant to D.C. Code § 28-3905(k)(l)(D) and brings this representative action on behalf of members of the general public who could bring the action under D.C. Code § 28-3905(k)(l)(A)." *Id.* at ¶ 140.

3.     On November 17, 2021, Plaintiff served copies of the Complaint and Summons on Abbott.  Copies of all process, pleadings, orders and other papers filed in the state court action— as available from the state court docket at the time of filing this Notice—are attached hereto as **Exhibit B**.

4.     On December 7, 2021, Abbott filed a Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint.

5.     The instant Notice of Removal is timely filed within thirty (30) days of Abbott's receipt through service of the Complaint and Summons on November 17, 2021.

6.     No further pleadings have been filed, and no proceedings have yet occurred in this action in the Superior Court of the District of Columbia.

7.     Venue for removal is proper in the United States District Court for the District of Columbia.

8.     Abbott bases removal on the Complaint raising federal questions and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

## II.    PLAINTIFF'S COMPLAINT RAISES FEDERAL QUESTIONS

9.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. "A case 'arises under' federal law if a 'well-pleaded complaint establishes ... that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."' *D.C. v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 53 (D.D.C. 2008) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).  A state law claim still raises a federal question when it "necessarily raise[s] a stated federal issue, [is] actually disputed and substantial," and the "federal forum may entertain [it] without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

10.    The face of Plaintiff's Complaint establishes that the asserted claims against Abbott raise substantial questions of federal law.

11.    ***First***, CLP alleges, "[i]n sum, Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment."  Compl. ¶ 40 (emphasis added).

12.    Plaintiff's claim that there is "no known safe level" of lead and cadmium is a necessary allegation in its Complaint, and is a representation and question of federal law.  Abbott disputes that federal law establishes that any detectible level of lead or cadmium is unsafe and impacts brain, bone, and immune health.

13.    Plaintiff explicitly and repeatedly references federal regulatory bodies that allegedly endorse this "no known safe level" standard in its Complaint:

- "The **Environmental Protection Agency**, **Food and Drug Administration**, the World Health Organization, **Centers for Disease Control and Prevention**, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children."  Compl. ¶ 30 (emphasis added); *see also id.* at ¶ 73 (same).

- "Given the ubiquity of **the public health and public policy positions above**, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done." *Id.* at ¶ 35 (emphasis added).

- "Abbott deceived D.C [sic] consumers into believing that the Product supported 'brain health' when it contained avoidable levels of multiple deleterious neurotoxins with **no known safe level** in a product intended for use during a critical period of neurodevelopment." *Id.* at ¶ 40 (emphasis added).

14.     The Complaint states that any deviation from this alleged federal "no known safe level" is a violation of the CPPA.  Consistent with *Grable*, a federal court has jurisdiction to hear state law claims that allege a federal standard as the bar by which Abbott's products are measured and determined to be safe.  545 U.S. at 312.

15.     ***Second***, "[i]nfant formula and baby food marketed in the United States are [] subject to FDA regulations." *See Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, 2013 WL 4501308, at *5 (D. Md. Aug. 21, 2013), *aff'd sub nom. Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015).  Infant formula is subject to federal regulation through the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Infant Formula Act of 1980 ("Formula Act"), Pub. L. No. 96-359, 94 Stat. 1190, and various implementing regulations that address the formulation of infant formula and its marketing/labeling.  *See, e.g.*, 21 U.S.C. § 350a (defining "adulteration" of infant formula in subsection (a); describing information needed for new formula in subsection (d)); 21 C.F.R. § 106.91 (describing quality control procedures).  Federal issues are necessarily and substantially implicated by Plaintiff's claims that encroach on these FDA regulatory powers.

16.     While "adulterated" is defined by federal law, the Plaintiff's Complaint alleges that "the Product is adulterated under DC Code § 48-103 *et seq.*" (*see, e.g.*, Compl. ¶ 36) based on a standard that conflicts with federal law. Plaintiff alleges the Product is "adulterated" under the D.C. Code based merely on the detectible presence of trace metals.  *See* Compl. ¶ 36.

17.     Plaintiff is using the District of Columbia's state-law CPPA claim to impose a standard for "adulteration" that conflicts with the federal regulatory standard for infant formula and therefore raises a federal question about compliance with the FDCA and relevant regulations. Plaintiff further seeks relief that could, among other things, require Defendant to provide conflicting information to consumers about the safety and efficacy of its infant formula, and promote its product in a manner that is different than what the FDA determined is appropriate under its Congressionally authorized regulatory scope.

18.     When a federal regulatory scheme occupies the regulation of products, such as the FDA does here, non-identical state law requirements are preempted. *See Nemphos ex rel. C.G.N.*, 2013 WL 4501308, at *3–*5.  Here, Plaintiff is seeking relief that would preclude the sale of a federally approved product and/or require Abbott to resubmit its product to the FDA. *See* 21 U.S.C. § 350a(d). Because of the mismatch between federal law and Plaintiff's claims, the latter are preempted both impliedly and expressly.

19.     Abbott actually disputes that a federal requirement of "no known safe level" is the measure for lead and cadmium in its products, nor is it a requirement for Abbott to truthfully and accurately label Alimentum as supporting "brain," "bone," or "immune support functions."

20.     Abbott actually disputes that the level of lead or cadmium Plaintiff alleges in Alimentum renders it "adulterated" under federal law.

21.     As D.C. CPPA claims are commonly adjudicated by the United States District Court for the District of Columbia, this federal forum may entertain Plaintiff's D.C. CPPA claims raising disputed federal issues without disturbing any Congressionally approved balance of federal and state judicial responsibilities.

## III.     REMOVAL IS APPROPRIATE UNDER CAFA

22.     In the alternative, this case is properly removed to this Court under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (partially codified at 28 U.S.C. § 1332(d)), and pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.[1]

23.     CAFA vests federal district courts with diversity jurisdiction over any purported class action in which (i) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (ii) the proposed class contains at least 100 members, and (iii) the amount in controversy is at least $5,000,000 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5).

24.     CAFA "only requires that the action be brought under Rule 23 or a statute that *authorizes* class actions to be brought by a person." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (emphasis in original). Plaintiff brings this action under D.C. Code § 28-3905(k)(1)(D)(i), which states that "public interest organizations may, on behalf of the interests of … a **class of consumers**, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District…." Compl. ¶¶ 140–41; D.C. Code §§ 28-3905(k)(1)(D)(i) (emphasis added).  Plaintiff is explicitly bringing this matter under a statute that authorizes class action.

25.     Further, Plaintiff seeks "the remedies available under D.C. Code §§ 28-3905(k)(2)(B-F)," which includes monetary damages. Compl. at Prayer for Relief. Under those statutory provisions, Plaintiff seeks monetary "[p]unitive damages" and "money" restitution (i.e., "relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice").   D.C. Code §§ 28-3905(k)(2)(B-F).  In *Rotunda v. Marriott International, Inc.*, the District of Columbia Court of

_____

[1] The allegations of the Complaint also indicate the existence of diversity of citizenship jurisdiction under 28 U.S.C. § 1331(a), because the parties are completely diverse, and the amount in controversy exceeds $75,000.

Appeals held that, to obtain representative relief "on behalf of the general public," CPPA actions seeking monetary relief must comply with the class certification requirements of Rule 23. 123 A.3d 980, 988–89 (D.C. 2015). As Plaintiff has prayed for remedies including punitive damages and "money" restitution, this case is removable under CAFA and *Rotunda*.

26.    This lawsuit otherwise meets the requirements of CAFA. ***First***, the parties are diverse in citizenship. Plaintiff is a citizen of Colorado seeking to represent consumers in the District of Columbia. *See* Compl. at Case Caption. Abbott Laboratories is not a citizen of Colorado (or the District of Columbia)—it is an Illinois corporation, with its corporate headquarters in Illinois.

27.    ***Second***, the proposed class in Plaintiff's Complaint is more than 100 members. Plaintiff's putative class would include all members of the general public of the District of Columbia that purchased the allegedly deceptive Similac product. *See, e.g.*, Compl. ¶¶ 37, 119, 140. The number of consumers who purchased Similac Alimentum in the District of Columbia surpasses 100 class members.

28.    ***Third***, the amount in controversy exceeds $5,000,000 in aggregate. *See Lavelle v. State Farm Mut. Auto. Ins. Co.*, 235 F. Supp. 3d 217, 220 (D.D.C. 2017) ("The claims of all putative class members are aggregated to determine the amount in controversy"). "If a defendant seeks to remove a class action to federal court pursuant to the Class Action Fairness Act, the 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Id.* at 220 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014)).[2]

---

[2] To the extent there is any dispute as to the amount in controversy, Abbott expressly reserves the right to submit evidence substantiating its jurisdictional allegations.

29.     The amount in controversy requirement for CAFA jurisdiction is met by the potential monetary damages and cost of equitable relief alleged by Plaintiff. The D.C. CPPA remedies sought by Plaintiff include "attorney's fees," "punitive damages," and "additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice." D.C. Code § 28-3905(k)(2). Further, Plaintiff seeks an order "enjoining Abbott's conduct found to be in violation of the CPPA," as well as "corrective advertising to the residents of the District of Columbia that restores consumers." Compl. at Prayer for Relief.

30.     As a result, Plaintiff alleges to seek the removal of thousands of bottles of Similac, reformulation of the product (and attendant research and development, FDA approval, etc.), and changes in labeling and marketing for the subsequent production of thousands of new Alimentum products.  These expenses plausibly place an amount of more than $5,000,000 potentially "in controversy."[3]  See 28 U.S.C. § 1332(d)(2); cf., Fefferman v. Dr. Pepper Snapple Grp., Inc., 2013 WL 12114486, at *3–4 (S.D. Cal. Mar. 12, 2013) (For class action regarding "antioxidant" advertising of 7Up, "[a]dding together the cost of corrective advertising, product recall, raw material destruction, attorney's fees, and a year of salary and benefits for the new employees prayed for in Plaintiff's complaint, the amount in controversy is over $5,000,000," including close to $5,000,000 for corrective advertisement alone).  The fact that Plaintiff did not seek relief under D.C. Code § 28-3905(k)(2)(a), under which a consumer who is harmed by an unlawful trade practice may sue for treble damages (or $1,500 per violation), reflects that the "punitive damages" and/or financial restitution sought by Plaintiff for each of the thousands of Alimentum products

---

[3] To be clear, while CLP's allegations place this amount in controversy, Abbott denies that CLP or any other litigant is entitled to and should obtain such a recovery and will vigorously defend against these allegations.

sold in the District of Columbia alone is greater than and plausibly exceeds the $5,000,000 CAFA amount in controversy.

## IV.   ALL OTHER REMOVAL REQUIREMENTS HAVE BEEN MET

31.   By filing this Notice of Removal, Abbott does not waive any defenses that may be available to it.

32.   Consistent with § 1446, Abbott is providing this Notice, which provides the requisite "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). This Notice has been prepared and signed by an authorized attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure. *Id.*

33.   Pursuant to 28 U.S.C. § 1446(d), Abbott is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the District of Columbia, attaching as Exhibit A thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, Abbott hereby gives notice that the above-entitled state court action, formerly pending in the Superior Court of the District of Columbia, has been removed to the United States District Court for the District of Columbia.

Respectfully submitted,

Dated:  December 10, 2021

WINSTON & STRAWN LLP

By:    */s/ Jonathan D. Brightbill*
Jonathan D. Brightbill (D.C. Bar 483956)
JBrightbill@winston.com
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855
*Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2021, the foregoing was served by U.S. mail on the

following counsel and electronically filed with the Clerk of Court using CM/ECF, which will send

notification of such filing to all registered participants.

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, D.C. 20037
(202) 643-1110
julie@oliverzhanglaw.com

*Counsel for Plaintiff*

By:    */s/ Jonathan D. Brightbill*
        Jonathan D. Brightbill
        D.C. Bar 483956
        JBrightbill@winston.com
        WINSTON & STRAWN LLP
        1901 L Street, N.W.
        Washington, D.C. 20036
        Tel. (202)-282-5855
        *Counsel for Abbott Laboratories*

# EXHIBIT A



# PROCESS SERVER DELIVERY DETAILS

**Date:**                       Wed, Nov 17, 2021

**Server Name:**                Drop Service

| Entity Served | ABBOTT LABORATORIES, INC. |
|---|---|
| Case Number | 2021CA003557B |
| Jurisdiction | DC |





**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Clean Label Project Foundation
_____
                                    Plaintiff

vs.                                                              Case Number   2021 CA 003557 B

Abbott Laboratories, Inc.
_____
                                    Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang, Esq. #997813
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW
_____
Address
Washington, DC 20037

202 - 643 - 1110
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

Date _____

如需翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                Demandante

contra

_____                    Número de Caso: _____
                                Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____        *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

                                          Por: _____
_____                    Subsecretario
Dirección

                                          Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(202)879-4828 로전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
10/01/2021 26:83PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1ˢᵗ Ave. | * | |
| Broomfield, CO 80038 | * | Case No. 2021 CA 003557 B |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15ᵗʰ St, NW, Suite 1000 | * | |
| Washington, DC 20005 | * | |
| | * | |

\*   \*   \*   \*;   \*   \*         \*   \*   \*   \*   \*   \*

### **Complaint**

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium. Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

## Introduction

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains and bodies are left unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

   a. Proper nutrition starting in pregnancy
   b. Exposure to toxins or infections during these critical periods
   c. The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins, nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy
[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).
[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html
[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity,* 9(2) Pediatric obesity 135-146 (2014).
[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging.* American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth, and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones, and they make purchasing decisions based on what they believe will maximize the health and wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development" and "bone development" platforms in order to capture this market.



**Figure 1**

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

---

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019), https://www.wwmtnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html
[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026-fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

    a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).
[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination*, Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm
[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf
[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent. As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado*. Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/candidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a.   The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b.   The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c.   The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible. There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%2 0by%20October%202019.-Nances%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20envir onmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20set%20the%20maximum%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

d.  The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[22]

e.  The American Medical Association has stated: "We know that there is no safe level of lead."[23]

f.  The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to the neurological health of these infants, who are disproportionately among an intersection of multiple vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive category test of over 60 infant formula commissioned by CLP has revealed that the levels of these contaminants are unusually high relative to competitive infant formula brands, with Defendant's Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learn
ing%20problems.

[22] CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013),
https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a
%20cup%20of%20liquid.)

[23] AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-
assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,*
https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-
health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code
§28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the
true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive
advertising and adulteration cause on behalf of themselves and the general public, and seek relief,
including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of
Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint,
consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423.  Defendant has
sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this
Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts
directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise
purposefully avails themselves of the laws of the District of Columbia through their marketing and
sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B),
(k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

## The Dangers of Lead

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafalowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function.* Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf.

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*. Nutrients, 3(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010).
https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq.* as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Support for the infant immune system.

    c.   Health bone development.

## Dangers of Cadmium

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711

[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 et seq as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 et seq as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).
[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. 211 Environmental pollution 67-73 (2016).
[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).
[41] *Id.*
[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children*. Environmental health perspectives, *127*(3), 037003 (2019).
[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[…] deleterious substance which may render it injurious to health[…]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium directly interferes with several marketed benefits of Abbott products:

    a.  Support for brain development.

    b.  Health bone development.

### Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products, specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

### Abbott's Marketing is Misleading and Omits Material Facts

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.

 

**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a false expectation that the Product will not contain contaminants that are harmful to infants.

> 8. Are your other formulas safe?
> Absolutely. We're a science-based company, so we always start with what science says. The science is clear—GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium due to the absence of palm olein oil.



**Figure 9**          **Figure 10**

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

### The Presence of lead in the Product

107. CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    ii.      As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

### The Presence of Cadmium in the Product

110.  CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical

chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

     a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    iii.   As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium

        content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

### Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune

functions of infants.

115. Abbott knew or should have known what representations it made on the Product.  Abbott also knew

or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively

marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase

decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C.
consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly
formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing
ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be
sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be
adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very
purpose of the Product.

**Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act**

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this
representative action claim on behalf of themselves and the general public of the District of
Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act,
D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral
problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq.*

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq.* Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

a.   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; ...

d.   represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

e.   misrepresent as to a material fact which has a tendency to mislead; ...

f.   fail to state a material fact if such failure tends to mislead

f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; ... [or]

h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq*, pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

(1) a direct conflict between the challenged conduct and the organization's mission, and

(2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

### Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under D.C. Code §28-3905(k)(2)(B-F):

A.  A Declaration that Abbott's conduct is in violation of the CPPA

B.  An Order enjoining Abbott's conduct found to be in violation of the CPPA

C.  An Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D.  An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

### Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

| Clean Label Project Foundation | Case Number: 2021 CA 003557 B |
|---|---|
| vs | Date: October 1, 2021 |
| Abbott Laboratories | ☐ One of the defendants is being sued in their official capacity. |

| Name: *(Please Print)* Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
|---|---|
| Firm Name: Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff |
| Telephone No.: 202-643-1110   Six digit Unified Bar No.: 997183 | ☐ Self (Pro Se)   ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☒ 6 Person Jury   ☐ 12 Person Jury
Demand: $_____   Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:   *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation              ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent         Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation              ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent        Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile              ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion              ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy                 ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                        Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference              ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution              ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal                  ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death)   ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,       ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                   ☐ 23 Tobacco
                                                                          ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE   ☐ IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
      (DC Code § 11-941)
- [✓] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [X] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
      (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
      Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
      Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
      Judgment [ D.C. Code §
      2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
      42-3301, et seq.)

- [ ] 21 Petition for Subpoena
      [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
      (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

| /s/ Julie Oliver-Zhang, Esq #997183 | October 1, 2021 |
|---|---|
| Attorney's Signature | Date |

CV-496/ June 2015



**Superior Court of the District of Columbia**
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

Clean Label Project
_____
PLAINTIFF                                     vs

280 E. 1st Ave #873
_____
Address (No Post Office Boxes)

Broomfield   Colorado   80038-0873
_____
City          State        Zip Code

734-678-9871
_____
Telephone Number

jbowen@cleanlabelproject.org
_____
Email Address (optional)

Abbott Laboratories
_____
DEFENDANT

100 Abbott Park Road
_____
Address (No Post Office Boxes)

Abbott Park   Illinois      60064
_____
City           State        Zip Code

224-667-6100
_____
Telephone Number

_____
Email Address (optional)

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant

   Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it

   contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product

   intended for use during a critical period of children's neurodevelopment. Abbott's false and

   misleading representations and omissions, including any tendency to mislead or omit violate

   the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.

2. What relief are you requesting from the Court? Include any request for money damages.

   A declaration that Abbott's conduct is in violation of the CPPA.

   Order enjoining Abbott's conduct found to be in violation of the CPPA

   Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

   Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3. State any other information, of which the Court should be aware:

_____
_____
_____
_____
_____
_____
_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

Julie Oliver-Zhang.
**SIGNATURE**

10/01/2021.
**DATE**

Subscribed and sworn to before me this ____1st____ day of ____October____ 20 21.

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

(Notary Public/Deputy Clerk)

2

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| v. | * | 2021 CA 003557 B<br>FILED WITH COMPLAINT |
| ABBOTT LABORATORIES | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **VERIFICATION**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of

Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read

the foregoing Complaint and know its contents; and that the facts stated therein are true to the best

of my knowledge, information, and belief.

 

 

| | |
|---|---|
| 10/01/21 | *Jaclyn Bowen* |
| Date | Jaclyn Bowen |



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

CLEAN LABEL PROJECT FOUNDATION
    Vs.                              C.A. No.     2021 CA 003557 B
ABBOTT LABORATORIES, INC

## INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:        October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:  Courtroom 320
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001

                    CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option 1** (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:** Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

# EXHIBIT B

## 2021 CA 003557 B CLEAN LABEL PROJECT FOUNDATION Vs. ABBOTT LABORATORIES, INC RR

**Case Type:**
Civil II
**Case Status:**
Open
**File Date:**
10/01/2021
**Action:**
Complaint for Deceit (Misrepresentation) Filed
**Status Date:**
10/01/2021
**Next Event:**
01/21/2022

All Information | Party | Event | Docket | Receipt | Disposition

### Docket Information

| Date | Docket Text | Image Avail. |
|------|-------------|--------------|
| 10/01/2021 | Complaint for Deceit (Misrepresentation) Filed. Receipt: 460575  Date: 10/05/2021 | |
| 10/01/2021 | eComplaint Filed. submitted 10/01/2021 20:01. mw (NO SUMMONS SUBMITTED)<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>CLEAN LABEL PROJECT FOUNDATION (Plaintiff); | Image |
| 10/05/2021 | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 01/21/2022   Time: 10:00 am<br>Judge: RIGSBY, ROBERT R   Location: Courtroom 320 | |
| 10/07/2021 | Complaint Package eServed to Filer | Image |
| 11/03/2021 | Initial Summons Requested Filed. submitted 11/03/2021 17:42. NB<br>Attorney: OLIVER-ZHANG, JULIE (997183)<br>ABBOTT LABORATORIES, INC (Defendant); | Image |
| 11/03/2021 | Issue Date: 11/05/2021<br>Service:  Summons Issued<br>Method:  Service Issued<br>Cost Per:  $<br><br>ABBOTT LABORATORIES, INC<br>100 Abbott Park Road<br>ABBOTT PARK, IL  60064<br>Tracking No: 5000237465<br><br>ABBOTT LABORATORIES, INC<br>CT Corporation System<br>1015 15th Street., N.W., Suite 1000<br>WASHINGTON, DC  20005<br>Tracking No: 5000237466 | |
| 11/29/2021 | Affidavit of Service of Summons & Complaint on Filed. submitted 11/29/2021 18:00. mw<br>ABBOTT LABORATORIES, INC (Defendant); | Image |

| Date | Docket Text | Image Avail. |
|------|-------------|--------------|
| 11/29/2021 | Proof of Service<br>    Method    : Service Issued<br>    Issued    : 11/05/2021<br>    Service   : Summons Issued<br>    Served   : 11/17/2021<br>    Return   : 11/29/2021<br>    On     : ABBOTT LABORATORIES, INC<br>    Signed By : Jousha Blevins<br><br>    Reason   : Proof of Service<br>    Comment  :<br><br>    Tracking #: 5000237466 | |
| 12/07/2021 | Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint Filed. submitted 12/07/2021 09:52. NB<br>Attorney: BRIGHTBILL, JONATHAN D (483956)<br>ABBOTT LABORATORIES, INC (Defendant);  Receipt: 464235  Date: 12/08/2021 | Image |
| 12/07/2021 | Additional eFiling Document to Consent Motion To Extend Time To Answer Plaintiff's Complaint Or Otherwise Respond To Plaintiff's Complaint Filed. submitted 12/07/2021 09:52. NB<br>Attorney: BRIGHTBILL, JONATHAN D (483956)<br>ABBOTT LABORATORIES, INC (Defendant); | Image |

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | * | Case No. 2021 CA 003557 B |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15th St, NW, Suite 1000 | * | |
| Washington, DC  20005 | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **Complaint**

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium.  Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

**Introduction**

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains and bodies are left unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

    a.   Proper nutrition starting in pregnancy
    b.   Exposure to toxins or infections during these critical periods
    c.   The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins, nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy
[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).
[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html
[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity*, 9(2) Pediatric obesity 135-146 (2014).
[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging*. American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth, and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones, and they make purchasing decisions based on what they believe will maximize the health and wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development" and "bone development" platforms in order to capture this market.



**Figure 1**

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

---

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019), https://www.wnbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html

[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026-fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

   a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).
[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination,* Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm
[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf
[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent. As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/candidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a.  The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b.  The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c.  The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible. There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%20by%20October%202019,-Nanoco%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20environmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

    d.   The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[22]

    e.   The American Medical Association has stated: "We know that there is no safe level of lead."[23]

    f.   The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to the neurological health of these infants, who are disproportionately among an intersection of multiple vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive category test of over 60 infant formula commissioned by CLP has revealed that the levels of these contaminants are unusually high relative to competitive infant formula brands, with Defendant's Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learning%20problems.

[22]CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013), https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a%20cup%20of%20liquid.)

[23] AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,* https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive advertising and adulteration cause on behalf of themselves and the general public, and seek relief, including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423.  Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails themselves of the laws of the District of Columbia through their marketing and sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B), (k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

## The Dangers of Lead

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafałowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function.* Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf.

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain.* Nutrients, *3*(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010).
https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq.* as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Support for the infant immune system.

    c.   Health bone development.

**<u>Dangers of Cadmium</u>**

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711
[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).

[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. 211 Environmental pollution 67-73 (2016).

[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).

[41] *Id.*

[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children*. Environmental health perspectives, *127*(3), 037003 (2019).

[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[...] deleterious substance which may render it injurious to health[...]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Health bone development.

## Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products, specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

**Abbott's Marketing is Misleading and Omits Material Facts**

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



We promise to give your baby the best

* Similac formulas have no artificial growth hormones *†

* Did you know: Similac dairy ingredients come from cows that have not been treated with artificial growth hormones

**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.



**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a

false expectation that the Product will not contain contaminants that are harmful to infants.

8. Are your other formulas safe?
Absolutely. We're a science-based company, so we always start with what science says. The science is clear—GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack

of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium

due to the absence of palm olein oil.



**Figure 9**                    **Figure 10**

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

<u>**The Presence of lead in the Product**</u>

107.  CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    ii.      As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

## The Presence of Cadmium in the Product

110.  CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical

chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

     a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

   iii.     As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium

content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

## Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune

functions of infants.

115. Abbott knew or should have known what representations it made on the Product.  Abbott also knew

or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively

marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase

decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very purpose of the Product.

## Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this representative action claim on behalf of themselves and the general public of the District of Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq.*

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq.* Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

    a.   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

    d.   represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

    e.   misrepresent as to a material fact which has a tendency to mislead; …

    f.   fail to state a material fact if such failure tends to mislead

        f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

    h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq*, pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

   (1) a direct conflict between the challenged conduct and the organization's mission, and

   (2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under D.C. Code §28-3905(k)(2)(B-F):

A. A Declaration that Abbott's conduct is in violation of the CPPA

B. An Order enjoining Abbott's conduct found to be in violation of the CPPA

C. An Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D. An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

| | |
|---|---|
| Clean Label Project Foundation | Case Number: __2021 CA 003557 B__ |
| vs | Date: __October 1, 2021__ |
| Abbott Laboratories | ☐ One of the defendants is being sued in their official capacity. |

| Name: *(Please Print)*<br>Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
|---|---|
| Firm Name:<br>Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>202-643-1110                    997183 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury          ☒ 6 Person Jury          ☐ 12 Person Jury

Demand: $_____          Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____    Judge: _____    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

## A. CONTRACTS                    COLLECTION CASES

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent         Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

## B. PROPERTY TORTS

☐ 01 Automobile                  ☐ 03 Destruction of Private Property      ☐ 05 Trespass
☐ 02 Conversion                  ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

## C. PERSONAL TORTS

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy                  ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                         Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference               ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution                ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal                    ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,         ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                            Not Malpractice)                     ☐ 23 Tobacco
                                                                           ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

| | |
|---|---|
| _/s/ Julie Oliver-Zhang, Esq #997183_ | October 1, 2021 |
| Attorney's Signature | Date |

CV-496/ June 2015



**Superior Court of the District of Columbia**
CIVIL DIVISION -- Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

| Clean Label Project | | Abbott Laboratories |
|---|---|---|
| PLAINTIFF | vs | DEFENDANT |
| 280 E. 1st Ave #873 | | 100 Abbott Park Road |
| Address (No Post Office Boxes) | | Address (No Post Office Boxes) |
| Broomfield  Colorado  80038-0873 | | Abbott Park  Illinois  60064 |
| City        State        Zip Code | | City        State        Zip Code |
| 734-678-9871 | | 224-667-6100 |
| Telephone Number | | Telephone Number |
| jbowen@cleanlabelproject.org | | |
| *Email Address (optional)* | | *Email Address (optional)* |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product intended for use during a critical period of children's neurodevelopment. Abbott's false and misleading representations and omissions, including any tendency to mislead or omit violate the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.

2. What relief are you requesting from the Court? Include any request for money damages.

   A declaration that Abbott's conduct is in violation of the CPPA.

   Order enjoining Abbott's conduct found to be in violation of the CPPA

   Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

   Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3. State any other information, of which the Court should be aware:

_____
_____
_____
_____
_____
_____
_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

_Julie Oliver-Sharp_
**SIGNATURE**

10/01/2021.
**DATE**

Subscribed and sworn to before me this _____ day of _October_ 20 21 .

_____
(Notary Public/Deputy Clerk)

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| | | **2021 CA 003557 B** |
| v. | * | FILED WITH COMPLAINT |
| ABBOTT LABORATORIES | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **VERIFICATION**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.


_____
10/01/21
Date

_____
Jaclyn Bowen

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
    Vs.                                    C.A. No.      2021 CA 003557 B
ABBOTT LABORATORIES, INC

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:      October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:   Courtroom 320
              500 Indiana Avenue N.W.
              WASHINGTON, DC 20001

CAIO-60

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:** **(AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> ❧ *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE: Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

CAIO-60

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|------|------|------|------|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Clean Label Project Foundation
_____
Plaintiff

vs.

Abbott Laboratories, Inc.
_____
Defendant

Case Number   2021 CA 003557 B

**SUMMONS**

To the above named Defendant:

  You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

  You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang, Esq. #997813
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW
_____
Address
Washington, DC 20037

202 - 643 - 1110
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

  IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

  If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____          Por: _____
Dirección                                                              Subsecretario

_____          Fecha _____

Teléfono
如需翻译, 请打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 전화주십시오       ፣ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                              Super. Ct. Civ. R. 4

AFFIDAVIT OF SERVICE

| Case: 2021 CA 03557 B | Court: In The Superior Court of The District of Columbia Civil Division | County: Washington, DC | Job: 6353286 |
|---|---|---|---|
| Plaintiff / Petitioner: Clean Label Project Foundation | | Defendant / Respondent: Abbott Laboratories, Inc. | |
| Received by: One Source Process, LLC | | For: Oliver-Zhang Law Office | |
| To be served upon: Abbott Laboratories, Inc. Serve on: Registered agent C T Corporation System | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein.

Recipient Name / Address:  Jousha Blevins, 1015 15th St NW Suite 1000, Washington, DC 20005
Manner of Service:  Authorized, Nov 17, 2021, 12:45 pm EST
Documents:  SUMMONS; COMPLAINT; CIVIL DIVISION - CIVIL ACTIONS BRANCH INFORMATION SHEET; COMPLAINT; VERIFICATION; INITIAL ORDER AND ADDENDUM; CIVIL REMOTE HEARING INSTRUCTION FOR PARTICPANTS (Received Nov 15, 2021 at 1:34pm EST)

Additional Comments:
1) Successful Attempt: Nov 17, 2021, 12:45 pm EST at 1015 15th St NW Suite 1000, Washington, DC 20005 received by Jousha Blevins. Age: 20; Ethnicity: Caucasian; Gender: Male; Weight: 169 lbs; Height: 5'8"; Hair: Brown; Relationship: Intake Specialist;

Subscribed and sworn to before me by the affiant who is personally known to me.

_____      11/19/2021
Notary Public                              Date

ANDREW VITA
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires December 14, 2022
Commission Expires

_____      11-19-21
Marquis Harris                         Date

One Source Process, LLC
1133 13th Street NW, Suite C4
Washington, DC 20005
800-668-5448



D.C. Superior Court
12/07/2021 09:52AM
Clerk of the Court

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| Clean Label Project Foundation | ) |
| Plaintiff, | ) )  ) |
| v. | )   Case No. 2021 CA 003557 B )  ) |
| Abbott Laboratories, Inc. | )   Judge: The Honorable Robert R. Rigsby )  ) |
| Defendant. | )  )  ) |

**CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S COMPLAINT
OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Abbott Laboratories ("Abbott"), through undersigned counsel, pursuant to Rule 6(b) of the Superior Court Rules of Civil Procedure ("Super. Ct. Civ. R."), and with the consent of counsel to Plaintiff Clean Label Project Foundation ("Plaintiff"), hereby moves the Court for a short extension of time in which to answer or otherwise respond to Plaintiff's Complaint ("Motion"), and in support states as follows:

1. On October 1, 2021, Plaintiff filed its Complaint.

2. On November 17, 2021, Defendant was served with a copy of the Complaint.

3. Pursuant to Super. Ct. Civ. R. 12(a), Defendant's deadline to file an answer or otherwise respond is at the earliest December 8, 2021.

4. On December 6, 2021, counsel for Abbott and Plaintiff (together, the "Parties") conferred and agreed to allow Defendant an extension of time to answer or otherwise respond to the Complaint.

5. Pursuant to the Parties' agreement, Defendant hereby requests that its deadline to answer or otherwise respond to the Complaint be extended by forty-five (45) days (i.e., up to and including Monday, January 24, 2022).

6. The extension is appropriate because Defendant recently retained the undersigned counsel, who needs additional time to assess the case and respond during the winter holidays and ongoing pandemic.

WHEREFORE, for the foregoing reasons, Defendant Abbott respectfully requests that the Court grant this motion and extend the deadline for Defendant to file an answer or otherwise respond to the Complaint until on or before Monday, January 24, 2022.

Dated:  December 7, 2021

WINSTON & STRAWN LLP

By:   */s/ Jonathan D. Brightbill*
      Jonathan D. Brightbill (D.C. Bar 483956)
      JBrightbill@winston.com
      1901 L Street, N.W.
      Washington, D.C. 20036
      Tel: (202) 282-5855
      *Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2021, true copies of the foregoing Consent

Motion to Extend Time to Answer Plaintiff's Complaint or Otherwise Respond to Plaintiff's

Complaint and Proposed Order were served by electronic filing through the Court's

CaseFileXpress system, to:

> Julie T. Oliver-Zhang, Esq.
> Oliver-Zhang Law, PLLC
> 810 New Hampshire Ave., NW
> Washington, DC 20037
> (202) 643-1110
> julie@oliverzhanglaw.com
> *Counsel for Plaintiff*

> */s/ Jonathan D. Brightbill*
> Jonathan D. Brightbill (D.C. Bar 483956)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Clean Label Project Foundation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2021 CA 003557 B |
| v. | ) | |
| | ) | Judge: The Honorable Robert R. Rigsby |
| Abbott Laboratories, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER ON CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S**
**COMPLAINT OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Upon consideration of the Consent Motion to Extend Time to Answer Plaintiff's Complaint

or Otherwise Respond to Plaintiff's Complaint ("the Consent Motion") filed by Defendant Abbott

Laboratories ("Defendant"), it is HEREBY ORDERED that the motion is GRANTED;

IT IS THEREFORE ORDERED that Defendant is granted an extension of the due date for

responding to the Complaint. The new due date for Defendant's response is **January 24, 2022**.

IT IS SO ORDERED.


Dated: December ___, 2021

_____
Judge Robert R. Rigsby

Copies to:

Julie T. Oliver-Zhang, Esq.
Oliver-Zhang Law, PLLC
810 New Hampshire Ave., NW
Washington, DC 20037
Tel: (202) 643-1110
julie@oliverzhanglaw.com
*Counsel for Plaintiff*

Jonathan D. Brightbill
Winston & Strawn LLP
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5855
JBrightbill@winston.com
*Counsel for Defendant*

# CIVIL COVER SHEET

JS-44 (Rev. 11/2020 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Clean Label Project Foundation<br>280 1st Ave., No. 873<br>Broomfield, CO 80038 | Abbott Laboratories<br>100 Abbott Park Road<br>Abbott Park, IL 60064 |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Julie T. Oliver-Zhang, Oliver-Zhang Law, PLLC<br>810 New Hampshire Ave., NW, Washington, DC 20037<br>(202) 643-1110<br>julie@oliverzhanglaw.com | ATTORNEYS (IF KNOWN)<br>Jonathan D. Brightbill, Winston & Strawn LLP<br>1901 L Street, N.W. Washington, D.C. 20036<br>(202)-282-5855<br>JBrightbill@winston.com |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A.  Antitrust**

- ☐ 410 Antitrust

○ **B.  Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

○ **C.  Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E.  General Civil (Other)**          OR          ○ **F.  Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**Other Statutes**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc
- ☐ 460 Deportation
- ☐ 462 Naturalization Application

- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act (TCPA)
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ● 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. § 1331 (Fed. Question); 28 U.S.C. § 1332 (Diversity/CAFA); 28 U.S.C. § 1441, 1446 (Removal)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** <br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | *(See instruction)* | YES ☐   NO ☒ | If yes, please complete related case form |

| DATE: ___12/10/2021___ | SIGNATURE OF ATTORNEY OF RECORD ___/s/ Jonathan D. Brightbill___ |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select one corresponding nature of suit found under the category of the case.

VI.  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**Filed**
**D.C. Superior Court**
**12/07/2021 09:52AM**
**Clerk of the Court**

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Clean Label Project Foundation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2021 CA 003557 B |
| v. | ) | |
| | ) | Judge: The Honorable Robert R. Rigsby |
| Abbott Laboratories, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S COMPLAINT**
**OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Abbott Laboratories ("Abbott"), through undersigned counsel, pursuant to Rule 6(b) of the Superior Court Rules of Civil Procedure ("Super. Ct. Civ. R."), and with the consent of counsel to Plaintiff Clean Label Project Foundation ("Plaintiff"), hereby moves the Court for a short extension of time in which to answer or otherwise respond to Plaintiff's Complaint ("Motion"), and in support states as follows:

1. On October 1, 2021, Plaintiff filed its Complaint.

2. On November 17, 2021, Defendant was served with a copy of the Complaint.

3. Pursuant to Super. Ct. Civ. R. 12(a), Defendant's deadline to file an answer or otherwise respond is at the earliest December 8, 2021.

4. On December 6, 2021, counsel for Abbott and Plaintiff (together, the "Parties") conferred and agreed to allow Defendant an extension of time to answer or otherwise respond to the Complaint.

5. Pursuant to the Parties' agreement, Defendant hereby requests that its deadline to answer or otherwise respond to the Complaint be extended by forty-five (45) days (i.e., up to and including Monday, January 24, 2022).

6.  The extension is appropriate because Defendant recently retained the undersigned counsel, who needs additional time to assess the case and respond during the winter holidays and ongoing pandemic.

WHEREFORE, for the foregoing reasons, Defendant Abbott respectfully requests that the Court grant this motion and extend the deadline for Defendant to file an answer or otherwise respond to the Complaint until on or before Monday, January 24, 2022.

Dated:  December 7, 2021

WINSTON & STRAWN LLP

By:    */s/ Jonathan D. Brightbill*
       Jonathan D. Brightbill (D.C. Bar 483956)
       JBrightbill@winston.com
       1901 L Street, N.W.
       Washington, D.C. 20036
       Tel: (202) 282-5855
       *Counsel for Abbott Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2021, true copies of the foregoing Consent Motion to Extend Time to Answer Plaintiff's Complaint or Otherwise Respond to Plaintiff's Complaint and Proposed Order were served by electronic filing through the Court's CaseFileXpress system, to:

    Julie T. Oliver-Zhang, Esq.
    Oliver-Zhang Law, PLLC
    810 New Hampshire Ave., NW
    Washington, DC 20037
    (202) 643-1110
    julie@oliverzhanglaw.com
    *Counsel for Plaintiff*

                                    */s/ Jonathan D. Brightbill*
                                      Jonathan D. Brightbill (D.C. Bar 483956)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| Clean Label Project Foundation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2021 CA 003557 B |
| v. | ) | |
| | ) | Judge: The Honorable Robert R. Rigsby |
| Abbott Laboratories, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER ON CONSENT MOTION TO EXTEND TIME TO ANSWER PLAINTIFF'S**
**COMPLAINT OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Upon consideration of the Consent Motion to Extend Time to Answer Plaintiff's Complaint

or Otherwise Respond to Plaintiff's Complaint ("the Consent Motion") filed by Defendant Abbott

Laboratories ("Defendant"), it is HEREBY ORDERED that the motion is GRANTED;

IT IS THEREFORE ORDERED that Defendant is granted an extension of the due date for

responding to the Complaint. The new due date for Defendant's response is **January 24, 2022**.

IT IS SO ORDERED.


Dated: December ___, 2021                    _____

                                            Judge Robert R. Rigsby


Copies to:

Julie T. Oliver-Zhang, Esq.              Jonathan D. Brightbill
Oliver-Zhang Law, PLLC                   Winston & Strawn LLP
810 New Hampshire Ave., NW               1901 L Street, N.W.
Washington, DC 20037                     Washington, D.C. 20036
Tel: (202) 643-1110                      Tel: (202) 282-5855
julie@oliverzhanglaw.com                 JBrightbill@winston.com
*Counsel for Plaintiff*                  *Counsel for Defendant*

AFFIDAVIT OF SERVICE

| Case:<br>2021 CA<br>03557 B | Court:<br>In The Superior Court of The District of Columbia<br>Civil Division | County:<br>Washington, DC | Job:<br>6353286 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Clean Label Project Foundation | | Defendant / Respondent:<br>Abbott Laboratories, Inc. | |
| Received by:<br>One Source Process, LLC | | For:<br>Oliver-Zhang Law Office | |
| To be served upon:<br>Abbott Laboratories, Inc. Serve on: Registered agent C T Corporation System | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:   Jousha Blevins, 1015 15th St NW Suite 1000, Washington, DC 20005
Manner of Service:   Authorized, Nov 17, 2021, 12:45 pm EST
Documents:   SUMMONS; COMPLAINT; CIVIL DIVISION - CIVIL ACTIONS BRANCH INFORMATION SHEET; COMPLAINT; VERIFICATION; INITIAL ORDER AND ADDENDUM; CIVIL REMOTE HEARING INSTRUCTION FOR PARTICPANTS (Received Nov 15, 2021 at 1:34pm EST)

Additional Comments:
1) Successful Attempt: Nov 17, 2021, 12:45 pm EST at 1015 15th St NW Suite 1000, Washington, DC 20005 received by Jousha Blevins. Age: 20; Ethnicity: Caucasian; Gender: Male; Weight: 169 lbs; Height: 5'8"; Hair: Brown; Relationship: Intake Specialist;

Subscribed and sworn to before me by the affiant who is personally known to me.

Marquis Harris                    Date

Notary Public         Date
ANDREW VITA
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires December 14, 2022
Commission Expires

One Source Process, LLC
1133 13th Street NW, Suite C4
Washington, DC 20005
800-668-5448

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

D.C. Superior Court
11/03/2021 07:48PM
Clerk of the Court

## Clean Label Project Foundation
Plaintiff

vs.

Case Number  2021 CA 003557 B

## Abbott Laboratories, Inc.
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang, Esq. #997813
Name of Plaintiff's Attorney

810 New Hampshire Ave NW
Address
Washington, DC 20037

202 - 643 - 1110
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

**11/04/2021**

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

---
_____ Demandante

contra

Número de Caso: _____

_____ Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le requiere entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

_____
Dirección

Fecha _____

_____
Teléfono
如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
한국어로 번역을 원하시면 (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

D.C. Superior Court
11/03/2021 17:42PM
Clerk of the Court

Clean Label Project Foundation
_____
Plaintiff

vs.

Abbott Laboratories, Inc.
_____
Defendant

Case Number  2021 CA 003557 B

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver-Zhang, Esq. #997813
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW
_____
Address
Washington, DC 20037

202-643-1110
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

### CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____
Nombre del abogado del Demandante

_____
Dirección

_____

_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
                               Subsecretario

Fecha _____

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 연락하십시오    የትርጉም እገዛ ከፈለጉ (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                     Super. Ct. Civ. R. 4

Filed
D.C. Superior Court
10/07/2021 20:03PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | * | Case No. <u>2021 CA 003557 B</u> |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15th St, NW, Suite 1000 | * | |
| Washington, DC  20005 | * | |
| | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## Complaint

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium.  Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

## Introduction

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains and bodies are left unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

   a. Proper nutrition starting in pregnancy
   b. Exposure to toxins or infections during these critical periods
   c. The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins, nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy
[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).
[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html
[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity,* 9(2) Pediatric obesity 135-146 (2014).
[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging*. American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth, and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones, and they make purchasing decisions based on what they believe will maximize the health and wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development" and "bone development" platforms in order to capture this market.



**Figure 1**

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

---

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019), https://www.wnbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html

[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026-fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

    a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).
[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination,* Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm
[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf
[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent.  As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/cmdidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a. The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b. The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c. The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible. There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%20by%20October%202019,-Nanoco%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20environmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

d. The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[22]

e. The American Medical Association has stated: "We know that there is no safe level of lead."[23]

f. The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to the neurological health of these infants, who are disproportionately among an intersection of multiple vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive category test of over 60 infant formula commissioned by CLP has revealed that the levels of these contaminants are unusually high relative to competitive infant formula brands, with Defendant's Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learn
ing%20problems.

[22]CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013),
https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a
%20cup%20of%20liquid.)

[23] AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-
assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,*
https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-
health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive advertising and adulteration cause on behalf of themselves and the general public, and seek relief, including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case. Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails themselves of the laws of the District of Columbia through their marketing and sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B), (k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

**The Dangers of Lead**

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafałowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats*. Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function*. Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf.

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain.* Nutrients, *3*(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010). https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq.* as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Support for the infant immune system.

    c.   Health bone development.

## Dangers of Cadmium

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711

[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).

[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. 211 Environmental pollution 67-73 (2016).

[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).

[41] *Id.*

[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children*. Environmental health perspectives, *127*(3), 037003 (2019).

[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[…] deleterious substance which may render it injurious to health[…]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Health bone development.

## Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products, specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

## Abbott's Marketing is Misleading and Omits Material Facts

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.






**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a false expectation that the Product will not contain contaminants that are harmful to infants.

8. Are your other formulas safe?
Absolutely. We're a science-based company, so we always start with what science says. The science is clear—GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium due to the absence of palm olein oil.



Figure 9                              Figure 10

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

**The Presence of lead in the Product**

107. CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

ii.       As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

## The Presence of Cadmium in the Product

110.  CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

    a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

    iii.    As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

## Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune functions of infants.

115. Abbott knew or should have known what representations it made on the Product.  Abbott also knew or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very purpose of the Product.

## **Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act**

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this representative action claim on behalf of themselves and the general public of the District of Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq.*

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq.* Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

a.  represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

d.  represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

e.  misrepresent as to a material fact which has a tendency to mislead; …

f.  fail to state a material fact if such failure tends to mislead

f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

h.  advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq,* pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

> (1) a direct conflict between the challenged conduct and the organization's mission, and
>
> (2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under

D.C. Code §28-3905(k)(2)(B-F):

A.  A Declaration that Abbott's conduct is in violation of the CPPA

B.  An Order enjoining Abbott's conduct found to be in violation of the CPPA

C.  An Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

D.  An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Clean Label Project Foundation

Case Number: __2021 CA 003557 B__

vs

Date: __October 1, 2021__

Abbott Laboratories

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
| Firm Name:<br>Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff<br>☐ Self (Pro Se) |
| Telephone No.:          Six digit Unified Bar No.:<br>202-643-1110              997183 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury       ☒ 6 Person Jury          ☐ 12 Person Jury

Demand: $_____        Other: Declaratory Judgment

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____    Judge: _____    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent    ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent     ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                 ☐ 26 Insurance/Subrogation
☐ 07 Personal Property                Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                 ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees           Under $25,000 Pltf. Grants Consent         Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                      Award (Collection Cases Only)

**B. PROPERTY TORTS**

☐ 01 Automobile            ☐ 03 Destruction of Private Property    ☐ 05 Trespass
☐ 02 Conversion            ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

**C. PERSONAL TORTS**

☐ 01 Abuse of Process          ☐ 10 Invasion of Privacy              ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection   ☐ 11 Libel and Slander                    Not Malpractice)
☐ 03 Assault and Battery       ☐ 12 Malicious Interference           ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution          ☐ 19 Wrongful Eviction
☒ 05 Deceit (Misrepresentation) ☐ 14 Malpractice Legal               ☐ 20 Friendly Suit
☐ 06 False Accusation          ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest              ☐ 16 Negligence- (Not Automobile,     ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                          Not Malpractice)                 ☐ 23 Tobacco
                                                                     ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
　　(DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
　　(D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
　　Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
　　Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
　　Judgment [ D.C. Code §
　　2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
　　42-3301, et seq.)

☐ 21 Petition for Subpoena
　　[Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
　　(Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____/s/ Julie Oliver-Zhang, Esq #997183_____
Attorney's Signature

_____October 1, 2021_____
Date

CV-496/ June 2015



**Superior Court of the District of Columbia**
CIVIL DIVISION -- Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

| | | |
|---|---|---|
| Clean Label Project | vs | Abbott Laboratories |
| PLAINTIFF | | DEFENDANT |
| 280 E. 1st Ave #873 | | 100 Abbott Park Road |
| Address (No Post Office Boxes) | | Address (No Post Office Boxes) |
| Broomfield Colorado 80038-0873 | | Abbott Park Illinois 60064 |
| City        State        Zip Code | | City        State        Zip Code |
| 734-678-9871 | | 224-667-6100 |
| Telephone Number | | Telephone Number |
| jbowen@cleanlabelproject.org | | |
| *Email Address (optional)* | | *Email Address (optional)* |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product intended for use during a critical period of children's neurodevelopment. Abbott's false and misleading representations and omissions, including any tendency to mislead or omit violate the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.

2. What relief are you requesting from the Court? Include any request for money damages.

   A declaration that Abbott's conduct is in violation of the CPPA.

   Order enjoining Abbott's conduct found to be in violation of the CPPA

   Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

   Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3.  State any other information, of which the Court should be aware:

_____

_____

_____

_____

_____

_____

_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s), Superior Court Civil Rules 11(b).

*Julie Oliver-Sharp*

**SIGNATURE**

10/01/2021

**DATE**

Subscribed and sworn to before me this _____ day of _October_ 20 _21_.

_____

(Notary Public/Deputy Clerk)

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

CLEAN LABEL PROJECT FOUNDATION          *

     Plaintiff,          *

                  **2021 CA 003557 B**

     v.          *          FILED WITH COMPLAINT

ABBOTT LABORATORIES          *

     Defendant.          *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>VERIFICATION</u>

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.


<u>  10/01/21  </u>
Date

           Jaclyn Bowen

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
    Vs.                                        C.A. No.      2021 CA 003557 B
ABBOTT LABORATORIES, INC

### INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:      October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:  Courtroom 320
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,    "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.   The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

Civil Remote Hearing Instructions for Participants

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:  (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> ✷ *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com   Select **Join**, enter the Meeting ID from the next page

AUDIO ALTERNATIVE:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4: (Ipad/SMART PHONE/TABLET):**

- • Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- • Sign into the App with your Name and Email Address
- • Select Join Meeting
- • Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- • Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- • seen). If you only need to speak and do not need to be seen, use the audio only option.
- • When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

CLEAN LABEL PROJECT FOUNDATION
    Vs.                          C.A. No.     2021 CA 003557 B
ABBOTT LABORATORIES, INC

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge ROBERT R RIGSBY
Date:       October 5, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

10:00 am, Friday, January 21, 2022
Location:  Courtroom 320
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

                      CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,    "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.    Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:**  **(AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise. If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** **(LAPTOP/ DESKTOP USERS 1):**

   Open Web Browser in Google Chrome and copy and paste following address from the next page:
   https://dccourts.webex.com/meet/XXXXXXXX

**Option 3:** **(LAPTOP/ DESKTOP USERS 2):**

   Open Web Browser in Google Chrome and copy and paste following address
   https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window. Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** **(Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

   **For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).**  After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom.  Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

Filed

D.C. Superior Court
10/01/2021 20:01PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | COMPLAINT |
| A 501(c)(3) | * | |
| 280 E. 1st Ave. | * | |
| Broomfield, CO 80038 | * | Case No._____ |
| On behalf of the general public | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | DEMAND FOR JURY TRIAL |
| ABBOTT LABORATORIES, INC. | * | |
| 100 Abbott Park Road | * | |
| Abbott Park, Ill 60064 | * | |
| | * | |
| Serve on: Registered Agent | * | |
| C T Corporation System | * | |
| 1015 15th St, NW, Suite 1000 | * | |
| Washington, DC  20005 | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### Complaint

On behalf of themselves and the general public, Plaintiff, Clean Label Project Foundation ("Clean Label Project" or "CLP"), hereinafter Plaintiff, by and through their counsel, bring this representative action against Defendant, Abbott Laboratories, ("Abbott" or "Defendant"), producers of Similac Products, regarding the deceptive labeling, marketing, and sale of Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz), ("Product")[1], in the District of Columbia, that was marketed as supporting brain & bone development when in it in fact contained concerning levels of multiple neurotoxins and a known osteotoxin. Contrary to Defendant's promises and assurances, CLP conducted independent testing and discovered the presence of lead in the Product as well as the presence of cadmium.  Plaintiff alleges the following based upon information, belief, and the investigation of its counsel:

---

[1] Discovery may demonstrate that additional Abbott products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant food and beverage items identified through the course of discovery.

## Introduction

1. Infancy, the period of time between birth and the acquisition of language[2], is a "critical period" of neurodevelopment – the development of the brain.

2. "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains and bodies are left unobstructed during these periods.

3. During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[3]

4. Although the brain continues to develop and change into adulthood, the first years can have a lasting effect on neurodevelopment.[4]

5. How well a brain develops depends on many factors in addition to genes, such as:[5]

   a. Proper nutrition starting in pregnancy
   b. Exposure to toxins or infections during these critical periods
   c. The child's experiences with other people and the world

6. Infancy is also a period when rapid bone growth occurs.[6]

7. For consumers who decide to formula feed, providing baby with the recommended amount of vitamins, nutrients, and minerals to sustain a healthy balanced diet for positive growth and development highly

---

[2] Johnson, Scott P., *Infancy* (May 28, 2014) https://www.britannica.com/science/infancy

[3] Huttenlocher, P. R., & Dabholkar, A. S, *Regional differences in synaptogenesis in human cerebral cortex*, 287(2) Journal of comparative Neurology 167-178 (1997).

[4] Center for Disease Control and Prevention. *Early Brain Development and Health*, (August 17, 2020), https://www.cdc.gov/ncbddd/childdevelopment/early-brain-development.html

[5] Gibbs, B. G., & Forste, R, *Socioeconomic status, infant feeding practices and early childhood obesity,* 9(2) Pediatric obesity 135-146 (2014).

[6] Cameron, N., & Demerath, E. W. *Critical periods in human growth and their relationship to diseases of aging.* American Journal of Physical Anthropology: The Official Publication of the American Association of Physical Anthropologists, 119(S35), 159-184 (2002).

important.[7]

8. Of equal importance, however, is the exclusion of any unnatural toxins which may disrupt this critical development.

9. Brands and retailers know that infancy represents a critical period for brain health and bone growth, and market this fact to consumers.

10. Thus, parents and caretakers know that infancy is an important time for their baby's brain and bones, and they make purchasing decisions based on what they believe will maximize the health and wellness of their baby.

11. Abbott is one such brand, marketing a line of infant formula products around "brain development" and "bone development" platforms in order to capture this market.



**Figure 1**

12. One component feature of Abbott's "bone development" platform is a specific formulation of 2'-Fucosyllactose Human Milk Oligosaccharide (2'-FL HMO), which is a constituent of breast milk that

---

[7] Kawata, Amy, *Natural' foods are not always what they claim to be*, (May 22,2019), https://www.wnbfnews.com/2019/05/22/natural-foods-are-not-always-what-they-claim-be/

supports immune development.

13. Abbott markets their infant formula products as providing immune support on the basis of the inclusion of 2'-FL HMO.

14. Abbott markets their 2'-FL HMO as being "palm olein oil-free for excellent calcium absorption and stronger bones."

15. One component feature of Abbott's "brain development" platform is their use of Docosahexaenoic acid (DHA), a fatty acid which plays a role in neurogenesis.[8]

---

[8] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).



**Figure 2**

16. Abbott produces Products that are sold to Consumers through retail stores (to include within the District of Columbia), and online.

17. While most infants are breastfed at least initially, only 1 in 4 infants are breastfed exclusively during this critical window.[9] This has given rise to a highly competitive $45B infant formula category[10]

---

[9] Centers for Disease Control and Prevention, *CDC Releases 2018 Breastfeeding Report,* (August 20, 2018), https://www.cdc.gov/media/releases/2018/p0820-breastfeeding-report-card.html
[10] Fortune Business Insights, *Infant Formula Size to Reach USD 103.75 Billion by 2026,* (October 2, 2019), https://www.prnewswire.com/news-releases/infant-formula-market-size-to-reach-usd-103-75-billion-by-2026-fortune-business-insights-300929520.html

which in turn incentivizes brands to entice consumers by promising superior outcomes for babies.

18. The rate of infant formula use is consistently associated with demographic and cultural factors, with both lower socioeconomic status ("SES") mothers and minority mothers disproportionately formula-feeding their infants[11].

19. Indeed, according to the US Centers for Disease Control and Prevention (CDC), infant formula use rates for mothers under 20 years of age was 57% compared to only 25% for mothers 30 years of age or older.[12]

20. Abbott is aware that infant formula, and the Similac brand specifically, are disproportionately utilized by low-SES, younger, and minority parents, as the Similac brand is an approved infant formula brand under the USDA Special Nutrition Program for Women, Infants, and Children ("WIC") in at least one state.[13]

21. 87% of WIC mothers rely on infant formula to feed their infants.[14]

22. As such, it is of heightened importance that Abbott's "brain development," "immune support," and "bone development" claims are true.

23. The Product in question is:

    a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

---

[11] Gibbs, B. G., & Forste, R., *Socioeconomic status, infant feeding practices and early childhood obesity. Pediatric obesity*, 9(2), 135-146, (2014).
[12] McDowell, Margaret, Kennedy-Stephenson, Jocelyn, *Breastfeeding in the United States: Findings from the National Health and Nutrition Examination,* Center for Disease Control (online), (April 2008), https://www.cdc.gov/nchs/products/databriefs/db05.htm
[13] Nutritional Services Branch WIC, *Special Supplemental Nutrition Program For Women, Infants, and Children, 2020 Colorado Wic Program Manuel* (online), (August 2020), https://www.coloradowic.gov/sites/default/files/media/document/2020%20Mini%20Manual_%20FINAL.pdf
[14] USDA Food and Nutrition Services, *Breastfeeding is a Priority in the WIC Program,* (August 2020), https://www.fns.usda.gov/wic/breastfeeding-priority-wic-program



**Figure 3**

24. Plaintiff purchased the Product for the purpose of evaluation by a third-party analytical chemistry laboratory. A third-party toxicologist assessed the results.

25. Abbott's product contains dangerous levels of known neurotoxin lead and known neurotoxin and osteotoxin cadmium.

26. This testing showed that the above-mentioned contaminants are present in the Product, or at a minimum, that Abbott makes no efforts to confirm that they are absent. As a result, D.C. consumers who are led to believe that the Product promotes brain, immune support, and bone health in fact bear the risk of purchasing a product that contains quantities of toxic heavy metals such as lead and cadmium, compounds known to impact brain, immune and/or bone health.

27. Cadmium is a toxic heavy metal, known to have severe short- and long-term neurotoxic effects.[15]

28. The European Union has declared Cadmium a "Substance of Very High Concern"[16] and is one of only

---

[15] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

[16] European Chemicals Agency, *Candidate List of Substances for Very High Concern for Authorisation* (Aug. 26, 2020), https://echa.europa.eu/candidate-list-table/-/dislist/details/0b0236e1807dd024.

six hazardous substances banned from use in Europe in electrical and electronic equipment due to the hazard posed to human health.[17]

29. Some states, such as Maryland, have banned cadmium in children's products.[18]

30. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

    a. The Environmental Protection Agency has stated, "[t]he Maximum Contaminant Level Goal for lead is zero. EPA has set this level based on the best available science which shows there is no safe level of exposure to lead."[19]

    b. The Food and Drug Administration has stated "[t]here is no known identified safe blood lead level."[20]

    c. The World Health Organization has likewise stated, "[t]he neurological and behavioural effects of lead are believed to be irreversible. There is no known 'safe' blood lead concentration…"[21]

---

[17] Laser Focus World [online], *European Commission to Prohibit from TV's and Displays by October 2019* (Aug. 22, 2017), https://www.laserfocusworld.com/lasers-sources/article/16569155/european-commission-to-prohibit-cadmium-from-tvs-and-displays-by-october-2019#:~:text=European%20Commission%20to%20prohibit%20cadmium%20from%20TVs%20and%20displays%20by%20October%202019,-Nanoco%2C%20which%20makes&text=Cadmium%20is%20one%20of%20six,protect%20human%20and%20environmental%20health.

[18] Safer States, *Maryland* (Aug. 26, 2020), https://www.saferstates.com/states-in-the-lead/maryland/

[19] EPA, *Basic Information about Lead in Drinking Water,* (August 13, 2020), https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water#:~:text=EPA%20has%20set%20the%20maximum,in%20the%20body%20over%20time.

[20] Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says,* (June 19, 2017), https://www.charlotteobserver.com/news/nation-world/national/article157063044.html

[21] The World Health Organization, *Lead Poisoning and Health,* (August 23, 2019), https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-

    d.  The Centers for Disease Control have found "[n]o safe blood lead level has been identified."[22]

    e.  The American Medical Association has stated: "We know that there is no safe level of lead."[23]

    f.  The American Academy of Pediatrics has stated: "There is no safe level of lead exposure in children, with lasting decreases in cognition documented in children with blood levels as low as 5 micrograms per deciliter of lead in blood." [24]

31. CLP made public the results of their first test of the infant formula category in 2017, which included similar results for Similac products.

32. As these neurotoxins have no known safe level for infants, they represent a serious and present risk to the neurological health of these infants, who are disproportionately among an intersection of multiple vulnerable populations.

33. The presence of these contaminants is neither "normal" nor "unavoidable", as a comprehensive category test of over 60 infant formula commissioned by CLP has revealed that the levels of these contaminants are unusually high relative to competitive infant formula brands, with Defendant's Product yielding a 31% higher content of lead, as well as yielding an 85% higher content of cadmium.

---

health#:~:text=The%20neurological%20and%20behavioural%20effects,behavioral%20difficulties%20and%20learn ing%20problems.

[22] CDC, *National Biomonitoring Program, Factsheet,* (July 12, 2013), https://www.cdc.gov/biomonitoring/Lead_factsheet.html#:~:text=No%20safe%20blood%20lead%20level,half%20a %20cup%20of%20liquid.)

[23]  AMA, *AMA Adopts New Policies to Prevent Future Lead Poisoning,* (June 14, 2016), https://www.ama-assn.org/press-center/press-releases/ama-adopts-new-policies-prevent-future-lead-poisoning

[24] American Academy of Pediatrics, *Lead Exposure in Children,* https://www.aap.org/Pages/ErrorPage.aspx?requestUrl=https://www.aap.org/en-us/advocacy-and-%20policy/aap-health-initiatives/lead-exposure/Pages/Lead-Exposure-in-Children.aspx

34. This means that parents selecting a formula to feed their infant during this critical period of neurodevelopment would expose their child to *less* cadmium and lead than would be provided by Abbott products by picking nearly any other brand.

35. Given the ubiquity of the public health and public policy positions above, Abbott knew or should have known of the risk of these toxins in the Product and should have taken steps to avoid these contaminants as their competitors clearly have done.

36. Thus, the Product is adulterated under DC Code §48-103 *et seq.* as the presence of these contaminants poses a risk to the neurological, immunological, and osteological wellbeing of the infants and the avoidable presence of these contaminants directly contradict the "brain development," "bone development" and "immune support functions touted by Abbott.

37. As a result of Abbott's "immune support," "brain development" and "bone development" marketing, D.C. consumers who are led to believe that the Product is safe for their baby and free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of concerning quantities of lead and cadmium.

38. D.C. consumers are enticed to purchase this Product over the products of Abbott's competitors on the basis of these false and misleading claims.

39. A reasonable D.C. consumer would not expect products claiming to support "brain health" sold in children to contain quantifiable amounts of lead or cadmium, especially when competitor products do not contain these issues.

40. In sum, Abbott deceived D.C consumers into believing that the Product supported "brain health" when it contained avoidable levels of multiple deleterious neurotoxins with no known safe level in a product intended for use during a critical period of neurodevelopment.

41. Abbott's false and misleading representations and omissions, including any tendency to mislead or

omit violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), DC Code §28-3901, *et seq.*

42. Abbott's labeling and advertising of the Product tends to mislead and is materially deceptive about the true nature, quality, and ingredients of the Product, Plaintiff Clean Label Project brings this deceptive advertising and adulteration cause on behalf of themselves and the general public, and seek relief, including but not limited to, an injunction to halt Abbott's false and misleading marketing and sale of Abbott Products.

## Jurisdiction and Venue

43. This Court has personal jurisdiction over the parties in this case.  Plaintiff, by filing this Complaint, consents to this Court having personal jurisdiction over them and this matter.

44. This Court has personal jurisdiction over Defendant pursuant to D.C. Code §13-423.  Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia,* Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails themselves of the laws of the District of Columbia through their marketing and sales of the Products in the District of Columbia.

45. This Court has subject matter jurisdiction over this action pursuant to D.C. Code §28-3905(k)(1)(B), (k)(1)(C) and (k)(2).[25]

## Parties

46. Clean Label Project ("CLP") is a section 501(c)(3) non-profit public interest organization whose

---

[25] There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard.

mission is to educate the public and enable consumers to make informed shopping choices.

47. CLP performs its work throughout the United States, including in the District of Columbia.

48. CLP uses state-of-the-art laboratory testing to identify the best and worst labeled products and publishes top and bottom performers on its website free of charge.

49. CLP was formed in 2016 with the goal of reducing contamination across all consumer products.

50. CLP has an interest in food label truth and transparency and consumers' right to know what is in the products they purchase. To that end, CLP educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

51. In June 2019 and August 2021, Clean Label Project purchased and caused the Abbott Product, as well as other infant formula products, to be purchased in order to evaluate their claims of purity.

52. At all times herein Abbott was an Illinois-based corporation that maintains its principal place of business and headquarters at Abbott Laboratories 100 Abbott Park Road, Abbott Park, Ill 60064.

53. Defendant markets and distributes the Product online and in retail stores in the District of Columbia and throughout the United States.

54. Upon information and belief, Defendant have caused harm to the general public of the District of Columbia.

55. Plaintiff is acting on behalf of the general public as private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D).

56. Plaintiff is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and the public-interest organizations pursuant to D.C. 28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers, including but not limited to D.C. consumers, for truthful labeling and marketing.

**The Dangers of Lead**

57. Lead is a heavy metal and a known neurotoxin and carcinogen. Lead resembles other metals that the human body needs to properly function and as such it is readily absorbed into body tissue.

58. Lead can damage and/or destroy cells once in the body, it also remains in the body for an extended period of time, causing even greater extent to the damage.

59. Neonatal and infant lead exposure has known adverse effects on infant outcomes across a wide range of blood lead levels.

60. Specifically, lead damages the myelin sheaths of neurons (protective insulation essential for proper neuronal functioning)[26] and interferes with neurotransmission (the communication between neurons)[27] both of which are potentially disastrous for human cognition & development.

61. Exposure to lead during early life can have long-lasting disruptive effects on brain health, including impaired neurodevelopment and increasing the incidence of behavioral issues and learning difficulties in children years later.[28]

62. The consequences of even low-level (part-per-billion) exposure can be severe. A principal risk of infant exposure to lead is a reduction in intelligence, with experts demonstrating a direct relationship between childhood blood-lead levels and intelligence quotient (IQ).[29]

---

[26] Dabrowska-Bouta, B., Sulkowski, G., Bartosz, G., Walski, M., & Rafalowska, U., *Chronic lead intoxication affects the myelin membrane status in the central nervous system of adult rats.* Journal of Molecular Neuroscience, *13*(1-2), 127-139 (1999).

[27] Neal, A. P., & Guilarte, T. R., *Molecular neurobiology of lead (Pb 2+): effects on synaptic function.* Molecular neurobiology, *42*(3), 151-160 (2010).

[28] Centers for Disease Control and Prevention. *Guidelines for the identification and management of lead exposure in pregnant and lactating women.* (2010). http://www.cdc.gov/nceh/lead/publications/leadandpregnancy2010.pdf.

[29] Pediatrics, *Prevention of Childhood Lead Toxicity*, (July 2016), https://pediatrics.aappublications.org/content/138/1/e20161493



**Figure 10**

63. In Flint, Michigan, following city-wide exposure to part-per-billion levels of lead in drinking water the portion of Flint's third graders who tested as proficient in reading at grade level fell from 41.8% to 10.7%.[30]

64. Lead also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF) an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[31]

65. Specifically, there is evidence that lead can impair aspects of neurogenesis that occur during the infancy critical period, which may persist into adulthood.

66. The presence of lead in these products renders Abbott's products adulterated under DC Code §48-103 *et seq* as lead impairs neurological development, a marketed benefit of Abbott Products.

---

[30] Grossman, Daniel, Slusky, David, *The Effect of an Increase in Lead in the Water System on Fertility Birth Outcomes: The Case of Flint Michigan*, (2017), http://www2.ku.edu/~kuwpaper/2017Papers/201703.pdf

[31] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*. Nutrients, *3*(5), 529-554 (2011).

67. In addition to disrupting neurodevelopment, recent research has linked lead to cardiovascular disease and ischaemic heart disease.[32]

68. Indeed, a recent study published in the journal Lancet Public Health found that low levels of lead contribute to 412 000 deaths each year, with over 250,000 of those being attributed to cardiovascular disease.[33]

69. Low levels of exposure to lead can also contribute to immune dysfunction later in life if lead exposure was experienced during a child's critical period of immune system development.[34]

70. This lead mediated disruption of immune-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as immune support is a marketed benefit of Abbott Products.

71. Lead has been previously linked to deterioration in bone mineral density, which can result in an increased risk of developing osteoporosis in later years.[35]

72. These deleterious effects on bone health directly conflict with Abbott's claims to support bone development, rendering Abbott's products adulterated under DC Code §48-103 *et seq.*

73. The Environmental Protection Agency, Food and Drug Administration, the World Health Organization, Centers for Disease Control and Prevention, the American Medical Association, and the American Academy of Pediatrics have all independently stated that there is no safe level of lead for children.

74. The consequences of even low-level (part-per-billion) exposure can be fatal.

---

[32] Hornung, R.W., Lanphear, B.P. *Low-Level Lead Exposure and Mortality in US Adults: A Population-Based Cohort Study.* Lancet Public Health, 3(4), 177-184 (2018).
[33] Id.
[34] World Health Organization. *Childhood Lead Poisoning.* (2010).
https://www.who.int/ceh/publications/leadguidance.pdf
[35] Akbal A, Tutkun E, Yılmaz H. *Lead exposure is a risk for worsening bone mineral density in middle-aged male workers.* Aging Male, 17(3), 189-193 (2014).

75. The presence of lead in infant formula represents adulteration under DC Code §48-103 *et seq*. as scientific evidence shows that lead directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Support for the infant immune system.

    c.   Health bone development.

### Dangers of Cadmium

76. Cadmium is a heavy metal, a known neurotoxin, and an IARC class 1 carcinogen, known for having both short-term and long-term deleterious effects on human health.

77. Once absorbed, Cadmium has a long half-life in the body, especially in the kidneys. Chronic Cadmium exposure has been shown to adversely affect kidney and bone and to increase the risk of cancer. Cadmium also functions as an endocrine disruptor and may thus affect reproduction and child neurodevelopment.[36]

78. Specifically, cadmium is thought to impair brain health through multiple pathways, including the interruption of DNA repair, the generation of reactive oxygen species, and (most critically), the disruption of neuronal proliferation and differentiation – two steps in the neurogenesis process occurring during the infancy critical period.[37]

79. It is unsurprising therefore that early life exposure to cadmium is associated with poor cognitive

---

[36] Kippler, M., Tofail, F., Gardner, R., Rahman, A., Hamadani, J. D., Bottai, M., & Vahter, M., *Maternal cadmium exposure during pregnancy and size at birth: a prospective cohort study.* Environmental health perspectives, *120*(2), 284–289 (2012), https://doi.org/10.1289/ehp.1103711

[37] Branca, J. J. V., Morucci, G., & Pacini, A. *Cadmium-induced neurotoxicity: still much ado.* Neural regeneration research, *13*(11), 1879 (2018).

outcomes in children.[38]

80. Cadmium also interferes with the levels of Brain Derived Neurotrophic Factor (BDNF)[39] an important neuroprotective molecule that plays a principal role in neurodevelopment, specifically neurogenesis.[40]

81. One mechanism behind the benefits of DHA supplementation (discussed above) is upregulation of BDNF in the brain.[41] Thus, the presence of cadmium detracts from a principal function of DHA – a basis for Abbott's "brain development" claims.

82. This cadmium-mediated disruption of neuro-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as brain development is a marketed benefit of Abbott Products.

83. Likewise, cadmium has been shown to disrupt several critical markers of bone development in children, which may lead to downstream bone-health issues in later life.[42] Thus, the presence of high levels of cadmium in the Products directly detracts from the claimed benefit to bone health made by Abbott.

84. This cadmium-mediated disruption of bone-development renders Abbott's products adulterated under DC Code §48-103 *et seq* as bone-development is a marketed benefit of Abbott Products.

85. In general, women are more susceptible to cadmium toxicity, mainly because of increased intestinal uptake of Cadmium given low iron stores, which are more prevalent in women than in men.[43]

---

[38] Sanders, A. P., Henn, B. C., & Wright, R. O., *Perinatal and childhood exposure to cadmium, manganese, and metal mixtures and effects on cognition and behavior: a review of recent literature*, 2(3) Current environmental health reports 284-94 (2015).

[39] Wang, Y., Chen, L., Gao, Y., Zhang, Y., Wang, C., Zhou, Y., ... & Tian, Y, *Effects of prenatal exposure to cadmium on neurodevelopment of infants in Shandong, China*. 211 Environmental pollution 67-73 (2016).

[40] Bradbury, J., *Docosahexaenoic acid (DHA): an ancient nutrient for the modern human brain*, 3(5) Nutrients 529-554 (2011).

[41] *Id.*

[42] Malin Igra, A., Vahter, M., Raqib, R., & Kippler, M. *Early-life cadmium exposure and bone-related biomarkers: a longitudinal study in children*. Environmental health perspectives, *127*(3), 037003 (2019).

[43] *Id.*

86. Thus, the presence of cadmium in infant formula is a "[…] deleterious substance which may render it injurious to health[…]" under DC Code §48-103 *et seq.* as scientific evidence shows that cadmium directly interferes with several marketed benefits of Abbott products:

    a.   Support for brain development.

    b.   Health bone development.

### Factual Allegations

87. Abbott is aware that there are health risks associated with infant exposure to lead.

88. Abbott is also aware there are health risks associated with infant exposure to heavy metals such as cadmium.

89. Abbott is also aware that consumers are concerned with the contents and ingredients of products, specifically infant formula.

90. Abbott is aware consumers seek out infant formula that provides specific benefits to infant development.

91. Further, Abbott is aware that the consumers who seek out infant formula – especially Abbott formula— are an extremely vulnerable group comprised of mothers from multiple protected and high-risk populations.

92. Abbott's Product contains quantifiable levels of lead.

93. Abbott's Product further contains quantifiable levels of cadmium.

94. Abbott markets its product as supporting brain health in part on the basis of formulating with DHA, a principal mechanism of which is disrupted by cadmium exposure.

95. Lead has been linked to deleterious outcomes in children's neurodevelopment, which can result in learning difficulties and other cognitive and behavioral problems.

96. Cadmium has been linked to deleterious outcomes in brain and bone development.

97. Abbott's marketing practices are false and misleading, as they extoll the brain-supporting, bone-supporting, and immune-supporting features of the Product while exposing infants to concerning levels of known neurotoxins and osteotoxins.

98. Abbott's Product is adulterated under DC Code §48-103 *et seq.*, as the presence of these contaminants renders it unsafe for its intended population, and the presence of these contaminants directly contradicts the intended benefit of the Product.

## Abbott's Marketing is Misleading and Omits Material Facts

99. To capture the market seeking out products that provide the best start possible for babies, Abbott markets its Product as "We promise to give your baby the best."



We promise to give your baby the best

* Similac formulas have no artificial growth hormones *⁺

* Did you know: Similac dairy ingredients come from cows that have not been treated with artificial growth hormones

**Figure 4**

100. Abbott knows the importance of the quality of the Product and the importance of trust of consumers.

To emphasize this point, they emphasize on their website, "Nearly a Century of Keeping Promises."



**Figure 5**



**Figure 6**

101. Abbott guarantees its consumers of the quality compared to other products by assuring providing information on how their Products compare to competitors.






**Figure 7**

102. Abbott implies assurances of purity on their packaging, website, and marketing, give consumers a

false expectation that the Product will not contain contaminants that are harmful to infants.

8. Are your other formulas safe?
Absolutely. We're a science-based company, so we always start with what science says. The science is clear—
GMOs are safe. The FDA has stated that ingredients from genetically engineered crops are safe to use in foods.

**Figure 8**

103. Abbott markets its products as supporting bone development and brain development due to the lack

of palm olein oil in them. Abbott advertises a promise of efficient absorption of DHA and calcium

due to the absence of palm olein oil.



Figure 9                              Figure 10

104. Abbott markets itself to consumers as a science-based company with safe product formulas.

105. Unfortunately for consumers, the Product in fact contains toxic metals, such as cadmium and lead, that are potentially dangerous to the vulnerable consumers to whom the Product is marketed.

106. The Product also contains toxic heavy metals that can have devastating effects on infant neurodevelopment.

**The Presence of lead in the Product**

107. CLP purchased the Product for the purposes of testing in June 2019 and August 2021.

108. In September 2021, quantitative testing was performed by an independent accredited analytical chemistry laboratory on samples of the Product as well as other samples of infant formula.

109. The results are in parts-per-billion (ppb).

Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

ii.      As a result of Quantitative testing, the sample of Defendant's Product yielded a lead content

of 3.5 ppb, which is higher than 31% of over 60 infant formulas tested.

## The Presence of Cadmium in the Product

110.  CLP purchased the Products for the purposes of testing in June 2019 and August 2021.

111. In September 2021, quantitative testing was performed by an independent accredited analytical

chemistry laboratory on samples of the Product as well as other samples of infant formula.

112. The result is in parts-per-billion (ppb).

      a.   Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz)

iii.     As a result of Quantitative testing, the sample of Defendant's Product yielded a cadmium

content of 5.2 ppb, which is higher than 85% of over 60 infant formula tested.

## Abbott Knew or Should Have Known its Representations Were False

113. Abbott holds itself out to the public as a trusted source of infant formula.

114. Abbott holds itself out to the public as tailoring its products to support brain, bone, and immune

functions of infants.

115. Abbott knew or should have known what representations it made on the Product.  Abbott also knew

or should have known how its Product was sourced, processed, and marketed.

116. Abbott knew, or should have known, the facts demonstrating that the Product was deceptively

marketed, falsely advertised, and adulterated.

117. D.C. consumers rely on labeling representations and marketing information in making purchase

decisions.

118. Abbott made false, misleading, and deceptive representations and omissions intending for D.C. consumers to rely upon those representations and omissions in purchasing the Product.

119. Abbott knowns that D.C. consumers seek out infant formula that consumers believe to be properly formulated and not adulterated.

120. Upon information and belief, Abbott has failed to remedy the problem with the Product, thus causing ongoing harm to D.C. consumers.

121. D.C. consumers are at risk of real, immediate, and continuing harm if the Product continues to be sold with misleading and/or deceptive representations or omissions.

122. Reasonable consumers do not expect a Product represented and advertised as infant formula to be adulterated and to contain toxic heavy metals such as cadmium and lead, which undermines the very purpose of the Product.

## Cause of Action Violation of the District of Columbia Consumer Protection Procedures Act

123. Pursuant to D.C. Code §28-3905(k)(1) and 28-39905(k)(2), the Clean Label Project brings this representative action claim on behalf of themselves and the general public of the District of Columbia, for Abbott's violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 *et seq.*

124. Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint.

125. Abbott adulterated the Product as the presence of lead can result in neurological and behavioral problems, as well as other reproductive health outcomes in exposed infants.[44]

126. Abbott further adulterated the Product as the presence of cadmium can have significant effects on

---

[44] DC Code §48-103 *et seq.*

infant development including permanent disfunction to neurological wellbeing.[45]

127. Abbott advertising of the Product misrepresents, tends to mislead regarding material facts, and omits facts regarding the source, characteristics, standard, qualities, or grades that Abbott states and implies.

128. The Product lack the characteristics, ingredients, benefits, standards, qualities, or grades that Abbott states and implies.

129. Abbott misstatements, innuendo, and omissions of material fact are material and have the tendency to mislead.

130. Abbott knowingly did not sell the Product as advertised.

131. The facts as alleged above demonstrate that Abbott has violated the CPPA, D.C. Code §28-3901 *et seq*.

132. Abbott's conduct is unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

133. The Clean Label Project has a sufficient nexus to D.C. consumers of the Product to adequately represent their interests.

134. Due to the fact that Abbott misrepresents the characteristics, ingredients, and benefits of the Product, misrepresents the standard, quality, and grade of the Product; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Product; and advertise the Product without the intent to sell the Product as advertised, and has adulterated the Product, Abbott's marketing of the Product, violates D.C. Code §28-3901 *et seq*. Specifically, Abbott has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

---

[45] *Id.*

    a.   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; …

    d.   represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

    e.   misrepresent as to a material fact which has a tendency to mislead; …

    f.   fail to state a material fact if such failure tends to mislead

        f-1. [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

    h.   advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

135. Additionally, Abbott has violated D.C. Code 28-3904 *et seq,* pursuant to the definition of "Adulterated", as defined in D.C. Code §48-103.

136. Abbott is a "person" within the meaning of D.C. Code §28-3901(a)(1) and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

137. Pursuant to D.C. Code §28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

138. Clean Label Project (CLP) is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the Product in order to test or evaluate their qualities.

139. As set forth in this Complaint, Plaintiff was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of clean and healthy food and ecological systems. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel, to pursue this action, and Plaintiffs have previously represented District consumers in similar actions under the CPPA.

140. Plaintiff is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and bring this representative action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

141. Section §28-3905(k)(1)(D)(i) of the CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

142. Plaintiff 's actions meet Article III's standing requirements for Public Interest Organizations:

(1) a direct conflict between the challenged conduct and the organization's mission, and

(2) a consequent drain on the organization's resources resulting from this direct conflict.

143. Defendant's actions impaired Plaintiff's mission to bring truth and transparency to food and consumer products labeling. Additionally, Plaintiff has expended their own resources in purchasing products from Defendant, thereby showing a consequent drain on Plaintiff's resources from this direct conflict.

144. In addition, CPPA's 'tester' standing provision protects Plaintiff's standing as a Public Interest Organization who purchased and tested Defendant's Product on behalf of the general public. Plaintiff's standing may not be denied based on notions of "self-inflicted harm".

145. Plaintiff is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization"

within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the

meaning of D.C. Code §28-3901(a)(15).

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for judgment against Defendant including the remedies available under

D.C. Code §28-3905(k)(2)(B-F):

A. A Declaration that Abbott's conduct is in violation of the CPPA

B. An Order enjoining Abbott's conduct found to be in violation of the CPPA

C. An Order requiring Abbott to provide corrective advertising to the residents of the District of
   Columbia that restores consumers.

D. An Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and
   expert fees, and prejudgment interest at the maximum rate allowable by law.

## Jury Trial Demanded

Plaintiff Clean Label Project hereby demand a trial by jury.

Dated: 10/01/2021

Respectfully submitted,

*/s/ Julie T. Oliver-Zhang*

Julie T. Oliver-Zhang, Esq. (D.C. Bar No. 997183)
**OLIVER-ZHANG LAW, PLLC**

810 New Hampshire Ave., NW
Washington, D.C. 20037
T: (202) 643-1110
F: (202) 643-1596
julie@oliverzhanglaw.com
Lead Counsel for Plaintiff
Clean Label Project Foundation (CLP)

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Clean Label Project Foundation

Case Number: _____

vs

Date: _October 1, 2021_____

Abbott Laboratories

☐ One of the defendants is being sued
   in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Julie Oliver-Zhang, Esq. | Relationship to Lawsuit |
| Firm Name:<br>Oliver-Zhang Law, PLLC. | ☒ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>202-643-1110          997183 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $_____  Other: Declaratory Judgment_____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____  Judge: _____  Calendar #:_____

Case No.:_____  Judge: _____  Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
|---|---|---|
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☒ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

☐ 01 Accounting
☐ 02 Att. Before Judgment
☐ 05 Ejectment
☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
☐ 10  Traffic Adjudication
☐ 11 Writ of Replevin
☐ 12 Enforce Mechanics Lien
☒ 16 Declaratory Judgment

☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
☐ 18 Product Liability

☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
☐ 29 Merit Personnel Act (OHR)
☐ 31 Housing Code Regulations
☐ 32 Qui Tam
☐ 33 Whistleblower

**II.**

☐ 03 Change of Name
☐ 06 Foreign Judgment/Domestic
☐ 08 Foreign Judgment/International
☐ 13 Correction of Birth Certificate
☐ 14 Correction of Marriage
   Certificate
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
☐ 27 Petition for Civil Asset Forfeiture (Currency)
☐ 28 Petition for Civil Asset Forfeiture (Other)

☐ 15 Libel of Information
☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
☐ 22 Release Mechanics Lien
☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
☐ 24 Petition for Structured Settlement
☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 04 Condemnation (Eminent Domain)
☐ 10 Mortgage Foreclosure/Judicial Sale
☐ 11 Petition for Civil Asset Forfeiture (RP)

☐ 08 Quiet Title
☐ 25 Liens: Tax / Water Consent Granted
☐ 30 Liens: Tax / Water Consent Denied
☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____/s/ Julie Oliver-Zhang, Esq #997183_____          _____October 1, 2021_____
Attorney's Signature                                                         Date



**Superior Court of the District of Columbia**
CIVIL DIVISION -- Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

| Clean Label Project | vs | Abbott Laboratories |
|---|---|---|
| PLAINTIFF | | DEFENDANT |
| 280 E. 1st Ave #873 | | 100 Abbott Park Road |
| Address (No Post Office Boxes) | | Address (No Post Office Boxes) |
| Broomfield  Colorado   80038-0873 | | Abbott Park  Illinois      60064 |
| City          State          Zip Code | | City          State          Zip Code |
| 734-678-9871 | | 224-667-6100 |
| Telephone Number | | Telephone Number |
| jbowen@cleanlabelproject.org | | |
| Email Address (optional) | | Email Address (optional) |

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Abbott has deceived D.C. consumers into believing their product, Similac Alimentum Infant Formula For Food Allergies and Colic (12.1 oz) supported "brain health" for their children when it contained avoidable levels of multiple deleterious neurotoxins with no safe level in a product intended for use during a critical period of children's neurodevelopment. Abbott's false and misleading representations and omissions, including any tendency to mislead or omit violate the District of Columbia Consumer Protection Procedures Act, DC Code §28-3901, et seq.

2. What relief are you requesting from the Court? Include any request for money damages.

   A declaration that Abbott's conduct is in violation of the CPPA.

   Order enjoining Abbott's conduct found to be in violation of the CPPA

   Order requiring Abbott to provide corrective advertising to the residents of the District of Columbia that restores consumers.

   Order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

3.   State any other information, of which the Court should be aware:

_____

_____

_____

_____

_____

_____

_____

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s), Superior Court Civil Rules 11(b).

*Julie Oliver-Sharpe*
**SIGNATURE**

10/01/2021.
**DATE**

Subscribed and sworn to before me this _____ day of _October_ 20 21

_____
(Notary Public/Deputy Clerk)

KEYLA MARCELA BELTRAN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires February 28, 2022

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| CLEAN LABEL PROJECT FOUNDATION | * | |
| Plaintiff, | * | |
| v. | * | FILED WITH COMPLAINT |
| ABBOTT LABORATORIES | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **VERIFICATION**

I, Jaclyn Bowen, verify under penalty of perjury according to the laws of the District of Columbia that I serve as Executive Director at Clean Label Project Foundation; that I have read the foregoing Complaint and know its contents; and that the facts stated therein are true to the best of my knowledge, information, and belief.

10/01/21
Date

Jaclyn Bowen